Donell Okeith JACKSON, Appellant,

v.

The STATE of Texas.

No. 72622.

Court of Criminal Appeals of Texas, En Banc.

April 28, 1999.

Rehearing Denied June 9, 1999.

Janet Morrow, Houston, for appellant.

Rikke Graber, Asst. Dist. Atty., Matthew Paul, State's Atty., for State.

## OPINION

The opinion was delivered PER CURIAM.

Appellant, Donell Okeith Jackson, was convicted of capital murder and sentenced to death. *See* TEX. PENAL CODE ANN. § 19.03(a)(2); Article 37.071, § 2.[1] Appeal to this Court is automatic. Article 37.071, § 2(h). Appellant raises twenty-six points of error. We will affirm.

## I.  FACTS

Appellant was charged with capital murder for the killing of Mario Stubblefield in the course of retaliation. Stubblefield had previously testified before a grand jury in its investigation of a prior offense involving appellant's friend David Smith. Eddie Clark, a witness at the scene of Stubblefield's shooting, testified that he had seen Smith sitting in a car in front of Stubblefield's house moments before the shooting. Clark said Smith was talking with Stubblefield and another man, who stood outside the car. Police later discovered the car belonged to Smith's girlfriend, Sheila Tolston. When questioned by police, Tolston implicated appellant in Stubblefield's murder. With this information, police assembled a photograph lineup, from which Clark positively identified appellant as the man standing next to the car just before Stubblefield was shot.

---

1. All references to articles are to the Texas Code of Criminal Procedure unless otherwise indicated.

Later, during a police interview in jail, Smith gave a taped statement claiming appellant committed the murder. Police arrested appellant and confronted him with Smith's statement. On the tape, Smith claimed he did not know appellant was going to shoot Stubblefield. When appellant heard this statement he replied, "Man, he paid me to do it." He then gave a taped confession, in which he claimed that Smith paid him two hundred dollars to kill Stubblefield.

At trial, appellant testified on his own behalf. He denied any payment or discussion of payment with Smith, and claimed he had intended only to scare Stubblefield out of testifying against Smith at trial. The jury found appellant guilty of capital murder.

During the punishment phase, the State introduced evidence that appellant had been found delinquent as a juvenile for the offense of indecency with a child, had been expelled from school for excessive absences after various other disciplinary problems, and had shot a former high school classmate in the face. Appellant presented evidence of a favorable home life and church membership, and two experts testified that he suffered from a learning disability. The jury answered the future dangerous issue "yes" and the mitigation special issue "no," and the trial court sentenced appellant to death as required by law.

## II. GUILT/INNOCENCE

### A. Pretrial Motion

■ In point of error twenty-four, appellant challenges the trial court's refusal to order payment of a polygraph examiner. Appellant filed a motion to permit a polygraph examination in the jail, and to authorize counsel to incur the expenses of the examination and testimony by the examiner "should that be necessary." Attached to the motion were (1) a letter from a polygraph examiner which said that he could administer an examination regarding whether appellant gave false information in his confession, and stating his fees for examining and testifying, (2) the polygraph examiner's resume, and (3) a copy of the opinion in *United States v. Posado*, 57 F.3d 428 (5th Cir.1995). The motion was denied on the day it was filed. We are not directed to any evidence in the record on the motion.

At trial appellant testified that a police officer misled him into making false statements in his taped confession. The officer denied doing so.

Appellant's argument has three components:

(1) Indigent defendants, such as himself, have a constitutional right to state-funded assistance from expert witnesses in a capital case. *See Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

(2) A polygraph examiner's opinion on appellant's credibility was as necessary to a fundamentally fair trial as the opinions of psychiatrists, pathologists, and chemists in other cases which the Supreme Court of the United States and this Court have considered. *See Ake v. Oklahoma, supra; Rey v. State*, 897 S.W.2d 333 (Tex.Cr.App.1995); *DeFreece v. State*, 848 S.W.2d 150 (Tex.Cr.App. 1993); *McBride v. State*, 838 S.W.2d 248 (Tex.Cr.App.1992).

(3) The opinion of a polygraph examiner is no longer subject to a *per se* rule of exclusion, but should be tested under Rule of Evidence 702. *See United States v. Posado, supra.*

The argument fails in the first and second steps, which makes it unnecessary to consider the third.

In *Ake v. Oklahoma, supra*, the Supreme Court found a constitutional right for an indigent defendant, who relied on an insanity defense in a capital case, to have the assistance of a state-provided psychiatric expert. The Court considered three factors: the defendant's interest, the

State's interest, and "the probable value of the ... procedural safeguards that are sought, and the risk of the erroneous deprivation of the affected interest if those safeguards are not provided." 470 U.S. at 77, 105 S.Ct. 1087. As to "the probable value of the psychiatric assistance sought, and the risk of error in the proceeding if such assistance is not offered," the Court "beg[a]n by considering the pivotal role that psychiatry has come to play in criminal proceedings." Id. at 79, 105 S.Ct. 1087. The Court found "a reality that we recognize":

> [W]hen the State has made the defendant's mental condition relevant to his criminal culpability and to the punishment he might suffer, the assistance of a psychiatrist may well be crucial to the defendant's ability to marshal his defense. In this role, psychiatrists gather facts, through professional examination, interviews, and elsewhere, that they will share with the judge or jury; they analyze the information gathered and from it draw plausible conclusions about the defendant's mental condition, and about the effects of any disorder on behavior; and they offer opinions about how the defendant's mental condition might have affected his behavior at the time in question. They know the probative questions to ask of the opposing party's psychiatrists and how to interpret their answers. Unlike lay witnesses, who can merely describe symptoms they believe might be relevant to the defendant's mental state, psychiatrists can identify the "elusive and often deceptive" symptoms of insanity, Solesbee v. Balkcom, 339 U.S. 9[, 70 S.Ct. 457, 94 L.Ed. 604] (1950), and tell the jury why their observations are relevant. Further, where permitted by evidentiary rules, psychiatrists can translate a medical diagnosis into language that will assist the trier of fact, and therefore offer evidence in a form that has meaning for the task at hand. Through this process of investigation, interpretation, and testimony, psychiatrists ideally assist lay jurors, who generally have no training in psychiatric matters, to make a sensible and educated determination about the mental condition of the defendant at the time of the offense.

> Psychiatry is not, however, an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, on cure and treatment, and on likelihood of future dangerousness. Perhaps because there often is no single, accurate psychiatric conclusion on legal insanity in a given case, juries remain the primary factfinders on this issue, and they must resolve differences in opinion within the psychiatric profession on the basis of the evidence offered by each party. When jurors make this determination about issues that inevitably are complex and foreign, the testimony of psychiatrists can be crucial and "a virtual necessity if an insanity plea is to have any chance of success." By organizing a defendant's mental history, examination results and behavior, and other information, interpreting it in light of their expertise, and then laying out their investigative and analytic process to the jury, the psychiatrists for each party enable the jury to make its most accurate determination of the truth on the issue before them. It is for this reason that States rely on psychiatrists as examiners, consultants, and witnesses, and that private individuals do as well, when they can afford to do so. In so saying, we neither approve nor disapprove the widespread reliance on psychiatrists but instead recognize the unfairness of a contrary holding in light of the evolving practice.

The foregoing leads inexorably to the conclusion that, without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the

cross-examination of a State's psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high. With such assistance, the defendant is fairly able to present at least enough information to the jury, in a meaningful manner, as to permit it to make a sensible determination. [470 U.S. at 80–82, 105 S.Ct. 1087 (footnotes omitted).]

The *Ake* Court "therefore h[e]ld that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." 470 U.S. at 83, 105 S.Ct. 1087.

By the same reasoning we have found it essential that indigent defendants be provided with access to experts in particular cases: a chemist in a controlled substance case,[2] a psychiatrist in a murder case in which insanity was the only contested issue,[3] and a pathologist in a capital murder case in which the "mechanism of death" was a significant factor.[4] In each of these cases, as in *Ake v. Oklahoma*, the defendant made a preliminary showing of a significant issue of fact on which the State would present expert testimony, and which the knowledge of a lay jury would not be expected to encompass.

■ The assistance of the experts in the cases we have discussed above is unlike the assistance of a polygraph examiner that appellant wanted. Appellant made no preliminary showing of a significant issue of fact on which the State would present expert testimony. (In fact the State did not present expert testimony.)[5] Nor did

appellant show that there was a significant issue of fact which the knowledge of a lay jury would not be expected to encompass. The issue was the credibility of two witnesses, appellant and a police officer, who gave different versions of a conversation between them. This is precisely the kind of issue on which courts routinely turn to lay juries for resolution.

The Supreme Court recently considered whether the exclusion of polygraph evidence unconstitutionally abridged the right of a defendant to present a defense. The Court held that it did not. *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). The Court noted that "there is simply no consensus that polygraph evidence is reliable." 523 U.S. at ——, 118 S.Ct. at 1265, 140 L.Ed.2d at 419. The Court also pointed out that the defendant freely exercised his choice to testify as to his version of the facts. 523 U.S. at ——, 118 S.Ct. at 1269, 140 L.Ed.2d at 424. The Court said it "therefore cannot conclude that respondent's defense was significantly impaired by the exclusion of polygraph evidence." *Ibid.* This language sharply contrasts with that of *Ake v. Oklahoma*, in which the Court said that the assistance of a psychiatric expert "may well be crucial to the defendant's ability to marshal his defense." 470 U.S. at 80, 105 S.Ct. 1087.

We hold that the district court did not err in denying appellant's motion. Point of error twenty-four is overruled.

### B. Lesser Included Offense Instruction

■ At trial appellant simply "ask[ed] that the lesser included charge of aggravated assault be included in the charge,"

2. *McBride v. State*, 838 S.W.2d 248 (Tex.Cr.App.1992).

3. *DeFreece v. State*, 848 S.W.2d 150 (Tex.Cr.App.1993).

4. *Rey v. State*, 897 S.W.2d 333 (Tex.Cr.App.1995).

5. There is no error in refusing to appoint an expert witness to assist an indigent defendant in rebutting a type of expert opinion that the State's witness did not present. *Griffith v. State*, 983 S.W.2d 282 (Tex.Cr.App.1998).

which request was denied. In point of error six, appellant more specifically contends the trial court erred in refusing to instruct the jury on the lesser included offense of aggravated assault by recklessly causing serious bodily injury. The questions are whether aggravated assault is a lesser included offense of capital murder, and whether the evidence would allow a rational jury to conclude that appellant was guilty only of the lesser offense. *See Royster v. State,* 622 S.W.2d 442, 446 (Tex. Cr.App.1981).

The "serious bodily injury" that appellant refers to is death.[6] There was no dispute in the evidence that appellant caused the death of the victim; there was no evidence that the victim suffered a lesser form of bodily injury. The only factual dispute that was relevant to this point of error was whether appellant caused the death intentionally or recklessly. When a person recklessly causes the death of an individual, the offense is manslaughter,[7] an offense which lies between murder and aggravated assault.  ·

A murder defendant is not entitled to an instruction on the lesser included offense of aggravated assault when the evidence showed him, at the least, to be guilty of a homicide. *Forest v. State,* 989 S.W.2d 365, 368 (Tex.Cr.App., 1999).

Since there was no evidence from which a rational jury could conclude that appellant did other than cause the death of the victim, the only lesser included offense that was raised by the evidence of recklessness was manslaughter.

As appellant could not satisfy the second, "guilty only" prong of the *Royster* test, the trial court did not err in refusing to charge the jury on aggravated assault. Point of error six is overruled.

### C.  Posttrial juror questioning

■ In points of error twenty-five and twenty-six, appellant contends that the trial court deprived him of the effective assistance of counsel by: (1) granting the State's motion to quash posttrial defense subpoenas for jurors, and (2) informing jurors that they were under no obligation to answer any questions regarding their service. Appellant concedes that there is caselaw contrary to his position but argues that the caselaw is contrary to the dictates of the right to counsel clauses contained in the Sixth Amendment of the United States Constitution and Article I, § 10 of the Texas Constitution.[8] In support of his position he cites *Stephenson v. State,* 494 S.W.2d 900 (Tex.Crim.App.1973) and *Stearnes v. Clinton,* 780 S.W.2d 216 (Tex. Crim.App.1989). Appellant's argument is flawed and his reliance upon these two cases is misplaced.

■ Our caselaw clearly holds that "[t]he refusal of any or all of the jurors, after their discharge, to talk to appellant's counsel or to sign affidavits relating to conduct in the jury room violates no statute and does not authorize reversal." *Phillips v. State,* 511 S.W.2d 22, 30 (Tex. Crim.App.1974); *see also Taylor v. State,* 420 S.W.2d 601, 608 (Tex.Crim.App.1967), *overruled on other grounds, Jackson v.*

6.  *See* TEX. PENAL CODE § 1.07(a)(46): " 'Serious bodily injury' means injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

7.  This offense was committed on August 31, 1993. At that time, recklessly causing the death of an individual was called "involuntary manslaughter." *See* Penal Code Act of 1973, 63d Leg., R.S., ch. 399, § 1, sec. 19.05(a)(1), 1973 Tex. Gen. Laws 913. By an act which took effect on September 1, 1994, the offense

was renamed "manslaughter" and renumbered as TEX. PENAL CODE § 19.04(a), without substantive change. *See* Act of June 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, sec. 19.04(a), 1993 Tex. Gen. Laws 3614.

8.  Appellant does not contend that state constitutional provision provides different or broader protection than its federal constitutional counterpart. Hence, we address his claims solely on federal constitutional grounds. *Johnson v. State,* 853 S.W.2d 527, 533 (Tex. Crim.App.1992), *cert. denied,* 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993).

*State,* 548 S.W.2d 685, 690 n. 1 (Tex.Crim. App.1977). Further, no error occurs when the jurors are informed that they are under no obligation to talk to defense counsel. *Phillips,* 511 S.W.2d at 30.

■ A defendant cannot be deprived of the effective assistance of counsel by actions of the trial court unless those actions prevented counsel from doing something he had the legal right to do. Counsel had the right to pursue an investigation on the client's behalf, but nothing prevented counsel from contacting the jurors and attempting to elicit information from them. The jurors simply had no obligation to cooperate with the defense counsel's investigation. In this respect, jurors are no different from any other person who might be a potential witness in a criminal investigation. Nor has appellant cited any authority showing that he was entitled to subpoena the jurors as witnesses. Assuming that such authority might be found in the Compulsory Process Clause of the Sixth Amendment, the defendant would bear the burden of showing that the testimony sought is material. *See Coleman v. State,* 966 S.W.2d 525, 528 (Tex.Crim.App. 1998). Appellant has not attempted to show that the jurors would testify to any matter that would be relevant to a motion for new trial.

Further, *Stephenson* and *Stearnes,* relied upon by appellant, are distinguishable from the present case. In *Stephenson,* the attorney filed a sworn motion for new trial that named three jurors and described their anticipated testimony (discussion of parole law and likelihood of the defendant getting a new trial). 494 S.W.2d at 908–909, 908 n. 6. The motion further stated that the jurors did not want to sign affidavits but were willing to testify if subpoenaed. *Id.* at 909. Hence, *Stephenson* is distinguishable from the present case in two respects: (1) the defendant provided evidence that the jurors possessed information material to the motion for new trial, and (2) defense counsel had in fact interviewed the jurors, who expressed a

willingness to testify. Neither of those two factors are present in the case at bar. As for *Stearnes,* that case was a mandamus action seeking to overturn a trial court's order to remove defense counsel because he had interviewed a State's witness. 780 S.W.2d at 217–218. Apparently, the attorney was removed because the trial court "was angered over trial counsel's action in interviewing a State's witness in violation of the District Attorney's rule." *Id.* at 223–224. The present case, by contrast, involves neither the removal of an attorney nor a prosecutor's rule forbidding witness interviews.

The authorities cited by appellant show, at most, that the prosecutor and the trial court may not prohibit the interviewing of former jurors. Those authorities do not show that the trial court must guarantee that jurors will submit to defense counsel's questioning. Points of error twenty-five and twenty-six are overruled.

### III. PUNISHMENT PHASE

#### A. Parole Eligibility

■ In points of error one through four, appellant claims the trial court's refusal to instruct the jury at the punishment phase that he would be ineligible for parole for 35 years if sentenced to life violated the Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10, 13, and 19 of the Texas Constitution. We have already addressed these contentions, and we decline appellant's invitation to revisit them. *See, e.g., Shannon v. State,* 942 S.W.2d 591, 594 (Tex.Crim.App.1996). Similarly, in point of error five, appellant contends the trial court should have allowed him to inform the jurors of the parole law and question them on that subject during voir dire. As we explained in *Shannon,* "[s]ince parole is not a proper area of inquiry in Texas capital cases, ... the judge [does] not abuse his discretion on denying [voir dire] questions pertaining to this topic." *Id.* at

596. Points of error one through five are overruled.

## B. Extraneous offense evidence

■ In point of error seven, appellant contends the trial court erred in refusing to instruct the jury in the punishment charge on the burden of proof for unadjudicated offenses and bad acts introduced at punishment. We have already concluded that, when the special issues include an instruction on the State's burden of proof, the trial court need not give a separate instruction on extraneous offenses. *Burks v. State,* 876 S.W.2d 877, 911 (Tex. Crim.App.1994); *Boyd v. State,* 811 S.W.2d 105, 123–124 (Tex.Crim.App.1991); *Lewis v. State,* 815 S.W.2d 560, 567 (Tex. Crim.App.1991). Appellant argues that our decision in *Mitchell v. State,* 931 S.W.2d 950 (Tex.Crim.App.1996) requires us to reach a different conclusion. However, *Mitchell* was a non-capital case and was based on the language in article 37.07 of the Texas Code of Criminal Procedure which allows both the state and the defendant to offer testimony at the punishment phase "as to any matter the court deems relevant to sentencing, including but not limited to … evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt...." Article 37.07, § 3. The evidence in capital cases is controlled by article 37.071, which contains no such restriction on the introduction of extraneous offense evidence. Furthermore, a jury in a non-capital case receives no instruction comparable to the special issues instructions in a capital case; this distinction explains the requirement in noncapital cases that the jury be separately instructed not to consider extraneous offenses unless they are proven beyond a reasonable doubt. We reaffirm our holding that in capital cases, "[w]here the charge to the jury properly requires the State to prove each of the special punishment issues beyond a reasonable doubt, no burden of proof instruction concerning extraneous offenses is required."

*Burks,* 876 S.W.2d at 911. Point of error seven is overruled.

■ In point of error eight, appellant contends that the trial court erred in refusing to instruct the jury, at the time the evidence was offered, on the burden of proof for unadjudicated offenses and bad acts introduced at punishment. He relies upon *Rankin v. State,* 974 S.W.2d 707 (Tex.Crim.App.1996) for the proposition that the trial court must give a limiting instruction at the time extraneous offense evidence is offered. *Rankin* holds that Texas Rule of Evidence 105 requires a contemporaneous limiting instruction to be given when evidence is offered for a limited purpose. That rule states in relevant part:

> When evidence which is admissible *as to one party or for one purpose* but not admissible *as to another party or for another purpose* is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly....

Rule 105(a)(emphasis added and ellipsis inserted). Rule 105 addresses parties and purposes; the rule does not address burdens of proof.

Moreover, *Rankin's* rationale for giving a contemporaneous instruction does not apply to burden of proof issues. The danger of delaying the giving of a limiting instruction is that the jurors may form an "indelible perception of the defendant" by using that evidence for an improper purpose. 974 S.W.2d at 711–713. For example, when an extraneous offense is admitted in the guilt phase of a trial, failing to give a limiting instruction at the time of admission may result in the jury drawing inferences about the defendant's guilt based upon character conformity, a use of the evidence that was not contemplated by the trial court. The danger then becomes that the improper inference drawn cannot later be erased by an instruction in the charge. By contrast, failing to instruct on the burden of proof does not carry the danger of causing jurors to draw an infer-

ence not contemplated by the trial court when the evidence was admitted. Moreover, burden of proof is typically a question jurors encounter when all of the evidence has been taken.[9] If proof that a defendant committed an extraneous offense is weak, jurors are just as likely to perceive that weakness after all of the evidence has been taken as they are when the extraneous offense was initially admitted. Therefore, we hold that a trial court is not required to give an instruction concerning the burden of proof at the time evidence of unadjudicated offenses and bad acts is admitted. Point of error eight is overruled.

■■■ In point of error nine, appellant contends that the trial court erred in refusing his requested instruction in the punishment charge to limit the jury's consideration of extraneous unadjudicated offenses or bad acts to the future dangerousness punishment issue.[10] We have recognized in the past that extraneous offenses may have relevance beyond the future dangerousness issue. *Lane v. State*, 822 S.W.2d 35, 40 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 920, 112 S.Ct. 1968, 118 L.Ed.2d 568 (1992)(extraneous offenses relevant to "deliberateness" special issue). And, we have recently recognized that aggravating circumstances can be considered in connection with the mitigation special issue.[11] *Mosley v. State*, 983 S.W.2d 249, 263–264 (Tex.Crim.App., 1998)(victim impact evidence relevant to the mitigation special issue). In *Mosley*, we explained that aggravating circumstances may be relevant to determine whether a particular mitigating circumstance or set of circumstances is sufficient to warrant a life sentence:

> [The death selection] process could hardly be considered "individualized" if half of the equation (relevant aggravating circumstances) were excluded. We simply recognize ... that the jury may consider aggravating factors in its selection decision. In determining whether to dispense mercy to a defendant after it has already found the eligibility [for death] factors in the State's favor, the jury is not, and should not be, required to look at mitigating evidence in a vacuum.

*Id.* at 264, n. 18. This reasoning in *Mosley* applies not only to victim impact testimony but also to other aggravating circumstances, including extraneous offenses. Extraneous offenses are relevant to determine whether the mitigating circumstances offered by the defendant are sufficient to warrant a life sentence. Hence, appellant was not entitled to an instruction limiting the consideration of extraneous offenses to the future dangerousness issue, because those offenses were also relevant to the mitigation special issue. Point of error nine is overruled.

■■■ In point of error ten, appellant contends that the trial court erred in refusing his requested instruction in the punishment charge to prohibit the jury from considering evidence of his guilt for the charged crime as evidence that he committed extraneous offenses. He contends that, absent such an instruction, a jury may impermissibly draw the inference that he is guilty of extraneous offenses because commission of the charged crime shows a propensity to commit the extraneous bad

9. And, by the time the punishment phase of the trial occurs, jurors have already become familiarized with requiring the State to prove criminal acts beyond a reasonable doubt.

10. That issue asks: "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Article 37.071 § 2(b)(1).

11. The mitigation issue asks:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.
>
> Article 37.071 § 2(e).

acts. While appellant attempts to argue that the constitution is implicated, the "propensity rule" regarding character evidence is simply a court-made rule of evidence, now found in Texas Rule of Evidence 404. However, Article 37.071, not Rule 404, governs the admission of character evidence in a capital trial. *Rumbaugh v. State,* 589 S.W.2d 414, 418 (Tex.Crim.App.1979)(Legislature abolished rule of evidence regarding extraneous offenses in capital sentencing; this Court has no power to restrict admissibility of such evidence); *Vuong v. State,* 830 S.W.2d 929, 942 (Tex.Crim.App.1992), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992)(Rule 404(b) inapplicable to capital sentencing). Nothing in Article 37.071 prohibits drawing propensity inferences from evidence of guilt of the charged crime. Point of error ten is overruled.

In point of error eleven, appellant contends that the trial court erred in refusing to submit special verdict forms requiring jury findings concerning extraneous offenses. This contention has been decided adversely to appellant's position. *Matchett v. State,* 941 S.W.2d 922, 937 (Tex.Crim. App.1996), *cert. denied,* 521 U.S. 1107, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997).

In point of error twelve, appellant contends that the admission of unadjudicated extraneous offenses violates Article 37.07. As appellant acknowledges, we have held that Article 37.071, not Article 37.07, applies to capital sentencing proceedings. We have recently reaffirmed this proposition. *Matchett,* 941 S.W.2d at 937–938. We find no novel or compelling argument to abandon our precedent. Point of error twelve is overruled.

In point of error thirteen, appellant contends that admission of unadjudicated extraneous offenses violates the Eighth and Fourteenth Amendments to the United States Constitution. We have previously resolved this claim adversely to his position. *Cantu v. State,* 939 S.W.2d 627, 648 (Tex.Crim.App.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997). Point of error thirteen is overruled.

## C. Defendant's failure to testify

In point of error fourteen, appellant contends that the trial court erred in refusing to permit him to take the stand in the punishment phase of the trial for the limited purpose of raising mitigation issues. In requesting that he take the stand for a "limited purpose," appellant sought to limit the State's ability to cross-examine him. He complains that, under the trial court's ruling, had he testified, the State would have been permitted to cross-examine him concerning extraneous offenses.

The United States Supreme Court has rejected a similar claim on the ground that the defendant had failed to preserve error. In *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), the defendant attempted to appeal a trial court's ruling that refused to exclude evidence of a prior conviction that the State intended to use for impeachment in the event that the defendant testified. *Id.* at 39–40, 105 S.Ct. 460. Because the defendant did not testify, the Supreme Court held that error was not preserved. *Id.* at 43, 105 S.Ct. 460. In support of its holding, the Supreme Court pointed to the difficulties with attempting to conduct a review in the situation before it. The Court would have been required to engage in the difficult task of speculating about (1) the precise nature of the defendant's testimony, (2) whether the trial court's ruling would have remained the same or would have changed as the case unfolded, (3) whether the government would have sought to impeach the defendant with the prior conviction, (4) whether the accused would have testified in any event, and (5) whether any resulting error in permitting impeachment would have been harmless. *Id.* at 41–42, 105 S.Ct. 460. As in *Luce,* the present case addresses a defendant's request to foreclose cross-examination about extraneous offenses and his refusal to testify when the trial court

denies his request. We find the reasoning in *Luce* to be applicable here. We hold that appellant has failed to preserve error. Point of error fourteen is overruled.

## D. Victim impact evidence

■ In point of error twenty-two, appellant contends that the trial court erred in admitting victim impact testimony by Curtis Smith, a police officer and an uncle of Stubblefield. Smith testified about the effect of Stubblefield's death on Stubblefield's father and grandmother:

Q. Can you tell the jury how Mario's death affected his father?

A. It affected him very bad because my brother was—had only one good leg and Mario was his future in being able to do things that he was not able to do as far as moving around and helping him move around; and with the incident happening, he just started deteriorating and which by doing so, he only lasted ten months after Mario's death.

Q. And do you know the cause of his death?

A. He didn't have the will to live anymore; and he had other physical ailments, also, which he just didn't care anymore.

Q. And how old was Prince Stubblefield?

A. 42.

Q. And was that the only immediate family that Mario had, that is, his mother who died when he was five and his father? Did he have any other brothers and sisters?

A. No.

Q. How has Mario's death affected your mom?

A. She has taken it extremely hard. And being here now, she has very high blood pressure; and I would rather that she had not been here because of it.

Appellant contends that this testimony was inadmissible because all victim impact testimony is inadmissible as a matter of law. We have recently held that victim impact testimony is admissible as relevant to the mitigation special issue, subject to the provisions of Tex.R. Evid. 403. *Mosley*, at 261–265. Appellant does not argue that the evidence is unfairly prejudicial or cumulative under Rule 403, and our examination of the evidence reveals no violation of that rule.[12] Point of error twenty-two is overruled.

## E. Photographs

■ In point of error twenty-three, appellant contends that the trial court erred, in the punishment phase, by excluding from evidence six photographs of appellant during his childhood. At trial, appellant contended that the photographs were relevant because they showed some circumstances of his life. Appellant relies upon our decision in *Cantu v. State, supra,* for the proposition that *any* information about the accused is relevant to the mitigation special issue. In a plurality opinion, we recently held that childhood photographs were not automatically relevant to the mitigation issue. *Rhoades v. State,* 934 S.W.2d 113, 125–126 (Tex.Crim.App. 1996). *Cantu* does not hold to the contrary. We reject the notion that every single piece of information about a defendant is relevant without regard to whether that information would tend to show that a life sentence, rather than the death penalty, is warranted. That appellant was once a child, even a happy one, does not, in itself, have any tendency to show that he should receive a life sentence rather than the death penalty. Point of error twenty-three is overruled.

## F. Special issues

In point of error fifteen, appellant contends that the statutory mitigation issue is unconstitutional because the issue omits a

12. Appellant contends in his brief that the State made improper comparative judgments between appellant and the victim during clos-

ing argument. But, appellant did not object and has failed to preserve error. *Mosley*, at 265.

burden of proof. He relies largely on *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). We have decided this issue adversely to appellant. *Anderson v. State,* 932 S.W.2d 502, 508 (Tex.Crim.App.1996), *cert. denied,* 521 U.S. 1122, 117 S.Ct. 2517, 138 L.Ed.2d 1019 (1997). We have specifically rejected the argument based upon *Walton* that appellant makes. *Williams v. State,* 937 S.W.2d 479 (Tex.Crim.App.1996). Point of error fifteen is overruled.

In point of error sixteen, appellant contends that the mitigation issue violates the Eighth Amendment because a meaningful appellate review of the issue is not possible. We have decided this adversely to appellant's position. *McFarland v. State,* 928 S.W.2d 482, 499 (Tex.Crim.App.1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997).

In point of error seventeen, appellant contends that the mitigation issue is unconstitutional because Article 44.251 requires an appellate sufficiency review of the issue but such a review is impossible. We have decided this contention contrary to appellant's position. *McFarland,* 928 S.W.2d at 498–499; *see also id.* at 524–525 (Keller, J. concurring).

In points of error eighteen and nineteen, appellant contends that the "12–10" rule embodied in Article 37.071 § 2(d)(2) and (f)(2) is unconstitutional.[13] He argues that the trial court should have instructed the jury that anything less than a unanimous vote in the State's favor on any of the special issues would result in a life sentence. We have decided this contention contrary to appellant's position. *McFarland,* 928 S.W.2d at 519; *Williams,* 937 S.W.2d at 490.

In point of error twenty, appellant contends that the trial court erred in refusing to submit an instruction that evidence may be mitigating even if it does not relate to moral blameworthiness. He contends that the reasoning in *Cantu v. State, supra,* requires the submission of such an instruction. But *Cantu* held that the current statutory definitions adequately encompassed the constitutional concept of mitigation. *Id.* at 648–649. The instructions submitted in the present case tracked the statute. Point of error twenty is overruled.

In point of error twenty-one, appellant complains about the trial court's refusal to submit his proposed sympathy instruction in connection with the special issues. Appellant's proposed instruction is virtually identical to the one addressed in our opinion in *Johnson v. State,* 1997 WL 209527, *9 (Tex.Crim.App.1997)(rehearing granted on other grounds). The instructions the trial court actually submitted are also virtually identical to the instructions submitted in *Johnson.* In *Johnson,* we decided this claim adversely to appellant's position. Point of error twenty-one is overruled.

The trial court's judgment is affirmed.

MEYERS, J., filed a concurring opinion in which JOHNSON, J., joined.

MANSFIELD, J., filed a concurring opinion.

MEYERS, J., delivered this concurring opinion, joined by JOHNSON, J.

In point of error twenty-two appellant claims the trial court erred in admitting victim impact evidence regarding the effect of the victim's death on the victim's family members. Appellant argues such evidence is irrelevant to any of the special issues. Appellant's trial took place before *Mosley v. State,* 983 S.W.2d 249, 264 (Tex.Crim.App. 1998), which held such evidence is relevant to the mitigation special issue. Per *Mosley,* the majority rejects appellant's relevance claim, and notes the only other limitation on such evidence, Rule 403, was not raised by appellant.

---

**13.** The "12–10" rule is a set of jury instructions requiring at least 10 "no" votes to answer the § 37.071 § 2(b)(e.g. future dangerousness) issues "no" and at least 10 "yes" votes to answer the mitigation issue "yes." Article 37.071 § 2(d)(2) and (f)(2).

Appellant cannot be expected to have anticipated the Court's ruling in *Mosley*, which came two years after appellant's trial. It was appellant's position at trial, based on caselaw existing at that time, that such evidence was irrelevant. Appellant had no reason to assert Rule 403, which only applies to evidence determined to be relevant.

Moreover, the Court emphasized in *Mosley* that such evidence *is not relevant to the issue of future dangerousness.* Since all of the special issues are considered by the jury together, if evidence is relevant to one issue, but not to another, the jury should be instructed to that effect. In appellant's case, the evidence came in at punishment for all purposes, contrary to *Mosley.*

I continue to hold to the view that we ought to examine more closely cases tried prior to this Court's opinion in *Mosley*, where trial courts' admit victim impact evidence without limitation, in contravention of the few, but specific limitations set forth in *Mosley*.[1] *See Griffith v. State*, 983 S.W.2d 282, 291 (Meyers, J., concurring). Because the victim impact evidence admitted in this case was ultimately harmless, I concur.

MANSFIELD, J., delivered the concurring opinion.

I join the opinion of the Court but write separately with respect to appellant's

twenty-fourth point of error. Appellant avers that, as an indigent, he was entitled to a court-appointed polygraph examiner paid for by the State. The polygraph examiner was to conduct a polygraph examination of appellant, the results of which, appellant contends, would have cast doubts on the reliability of police testimony regarding the taking of appellant's confession.[1]

In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court held an indigent defendant has a due process right to state-funded expert assistance where the defendant makes a preliminary showing the issue for which he seeks expert assistance is likely to be a significant factor at trial. In *Ake*, the Court held the indigent defendant was entitled to a state-paid psychiatrist to provide expert assistance as to the issue of future dangerousness at the punishment phase of his capital murder trial. Failure to provide such assistance, the Court held, violated Ake's due process rights, particularly in light of the fact that the State offered expert testimony that Ake was both sane and a future danger, testimony that, unrebutted, was clearly harmful to Ake's defense.

In *Rey v. State*, 897 S.W.2d 333 (Tex. Crim.App.1995), we held an indigent defendant is entitled to a state-paid expert, regardless of the expert's specialty, where

---

1. The limitations being that such evidence is patently irrelevant to the issue of future danger, that such evidence is admissible only in "the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the defendant, and as rebuttal to the defendant's mitigating evidence, that there are numerous considerations to make in the context of Rule 403, and that such evidence should not involve comparative worth analyses." Other issues can be raised under *Mosley.* Defendants may now waive altogether "submission and reliance" on the mitigation special issue and thereby avoid the State's admission of victim related evidence. *Mosley*, at 264. At the time of appellant's trial, the law suggested special issues could

not be waived. *Powell v. State*, 897 S.W.2d 307, 314–18 (Tex.Crim.App.1994)(plurality opinion); *id.* at 318 (Clinton, J., concurring)(holding "deliberateness" issue could not be waived, even affirmatively, by defendant). *Mosley* held *Powell* inapplicable to the mitigation issue. We have no way of now knowing what choice appellant would have made had he been aware of this option at the time of his punishment hearing.

1. Appellant claims police officers, especially Officer Brown, misled him into making false statements about being paid to shoot the victim of the instant offense. Appellant testified the shooting was unintentional.

said defendant establishes a substantial need for such assistance and denial of said assistance would be fundamentally unfair.

Appellant, in my opinion, has not demonstrated that the assistance of an expert in this instance would be of assistance to the jury, the trier of fact. Simply put, appellant alleges Officer Brown's testimony concerning the facts and circumstances surrounding the taking of appellant's statement was not truthful and the polygraph evidence would support this allegation. As determining the truthfulness of a witness is solely within the province of the jury, we have held that expert testimony regarding witness truthfulness is not admissible as it would not be of any assistance to the jury. *Yount v. State,* 872 S.W.2d 706, 709–711 (Tex.Crim.App.1993); *Cohn v. State,* 849 S.W.2d 817, 818 (Tex. Crim.App.1993). Furthermore, expert opinion testimony as to the truthfulness of a witness is not admissible under Rule 702. *Yount, supra,* at 708.

Finally, I note that the United States Supreme Court recently held constitutional the ban against the use of polygraph evidence in military courts-martial. The Court noted the reliability of polygraph evidence is a subject of considerable controversy within the scientific community and thus its exclusion does not implicate constitutional concerns. *United States v. Scheffer,* 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). While I would not necessarily label polygraph evidence as being the product of "junk science," its reliability is sufficiently suspect, in my opinion, to continue the ban on its use in Texas courts. It is the jury that is the "lie detector."

As polygraph evidence is not admissible, the trial court did not abuse its discretion in denying appellant funds to retain a polygraph examiner.

With these comments I join the opinion of the Court.