**Opinion filed November 18, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00340-CR
_____

## MARK ANTHONY RODRIGUEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 28067A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Mark Anthony Rodriguez of two counts of aggravated assault, found the enhancement allegations to be true, and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for concurrent terms of ninety-nine years for Count One and fifty years for Count Two. Appellant challenges his convictions and punishment in four issues. We affirm.

*Background Facts*

The State charged Appellant by indictment with two counts of aggravated assault. The State alleged in the first count that Appellant caused bodily injury to Aaron Gilley by intentionally, knowingly, and recklessly stabbing Gilley with a knife, which was alleged to be a deadly weapon. *See* TEX. PENAL CODE ANN. 22.02(a)(2) (West Supp. 2021). The State alleged in the second count that Appellant caused bodily injury to Kindra Haggerty by intentionally, knowingly, and recklessly stabbing Haggerty with a knife, which was alleged to be a deadly weapon. *See id.*

On March 30, 2017, Gilley and Haggerty went to Mike Guerrero's residence on Grape Street in Abilene to trade knives for heroin. Gilley testified that Guerrero, Appellant, and Sunny King (Appellant's girlfriend) were present inside the residence. Gilley and Haggerty did not know Appellant or his girlfriend. Haggerty testified that Guerrero referred to Appellant as "Marcos."

Gilley testified that Guerrero and Appellant were arguing about money that Guerrero owed to Appellant. Shortly after Gilley's and Haggerty's arrival, they were told that they needed to leave. Gilley and Haggerty started to comply, but before they could exit the apartment, Appellant began attacking Gilley and Haggerty. Appellant stabbed both Gilley and Haggerty multiple times.

During the course of the attack, Haggerty fled the apartment to a nearby fire station to get help. Appellant chased Haggerty out of the apartment. Upon arriving at the fire station, Haggerty realized that Appellant was no longer chasing her, and she returned to the apartment to render aid to Gilley.

Abilene Police Officer Ryder Foster responded to a call for service at the residence. Officer Foster questioned Gilley, Haggerty, and other bystanders at the scene to determine potential suspects. Haggerty told Officer Foster that she knew the person who had done the stabbing by the name "Marco." Additionally, the

bystanders described the suspect "as a tatted-up Mexican guy" who "had tattoos all on his neck." Officer Foster further learned that the suspect left the scene in a black SUV.

Officer Foster accompanied Gilley and Haggerty to the hospital. He learned that, during the altercation, Gilley had knocked Appellant's glasses off his face. Officer Foster remembered seeing a pair of glasses at the scene, and he called Officer Brady Broyles to recover the glasses. Officer Broyles collected the clothing the EMTs removed from Gilley, a cell phone, and a pair of glasses from the scene.

The Texas Department of Public Safety performed a DNA test on the glasses and the cell phone taken from the scene. The DNA test on the cell phone showed that Appellant could not be excluded as a possible contributor to DNA found on the cell phone. The DNA test on the glasses also showed that Appellant could not be excluded as a possible contributor of DNA on the glasses.

Abilene Police Detective Tim Pipes subsequently contacted Guerrero. He provided Detective Pipes with Appellant's name. After learning Appellant's name, Detective Pipes learned that Appellant and King were in a dating relationship, that they shared a child together, and that King drove a black SUV.

Detective Pipes conducted three separate photo lineups with Gilley and Haggerty. In the first lineup, Detective Pipes asked Gilley and Haggerty separately to identify the assailant. However, both Gilley and Haggerty were unable to identify Appellant as the assailant. In the second lineup, Detective Pipes asked Gilley and Haggerty separately to identify King. They were both able to identify King. In the third lineup, Detective Pipes requested Officer Zellner of the Burkburnett Police Department to ask Gilley and Haggerty to identify the assailant. However, both Gilley and Haggerty were unable to identify Appellant as the assailant.

*Sufficiency of the Evidence*

In his first issue, Appellant challenges the sufficiency of the evidence supporting his convictions for aggravated assault. Specifically, Appellant contends that Gilley's and Haggerty's in-court identifications of Appellant were insufficient to identify him as the assailant. He also asserts that the DNA evidence failed to show that he was present at the scene at the time of the assaults.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson* 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (*Winfrey II*); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514, S.W.3d 227, 232 (Tex. Crim. App. 2017).

An essential element to every crime is that the State must prove beyond a reasonable doubt that the defendant is the person who committed the crime charged. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984). Identity may be proven by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). Appellant contends that Gilley's and Haggerty's in-court identification was unreliable to prove that Appellant was the assailant because it was the first time that they had ever identified him.

Generally, the testimony of a single eyewitness can be enough to support a conviction. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). Although Gilley's and Haggerty's prior failures to identify Appellant may have conflicted with their later in-court identification, "[t]he fact that the complaining witness had previously failed to identify [A]ppellant goes only to the weight to be given the identification evidence." *Young v. State*, 650 S.W.2d 457, 458 (Tex. App.—Houston [14th Dist.] 1982, no pet.) (citing *Wilson v. State*, 581 S.W.2d 661

(Tex. Crim. App. 1979)). The jury alone decides whether to believe eyewitness testimony, and we presume that the jury resolved any conflicts in the evidence in favor of the verdict. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); *see Brooks*, 323 S.W.3d at 899; *Clayton*, 235 S.W.3d at 778.

Detective Pipes testified that both Gilley and Haggerty were "emphatic" that their assailant did not have neck tattoos. Appellant cites this testimony to suggest that he could not have been the person who committed the offenses. However, both Gilley and Haggerty testified that they do not recall ever making such a statement. To the contrary, Haggerty testified that she told Officer Zellner the following:

> I did not say that the man who assaulted me did not have tattoos. I remember saying he had [inferior] tattoos. I remember saying that. I don't know what type of tattoos. They tried to ask me what type. I said, I don't know. They were [inferior] tattoos. That's all I remember.

Haggerty further explained that she did not pick Appellant out of the lineup because she wanted to be one hundred percent sure that she picked the right person. However, she testified that in the Burkburnett lineup, she had a feeling that one of the individuals depicted in the lineup was the one who assaulted her. Additionally, Haggerty stated the photographs in the lineup depicted Appellant as heavier and with facial hair rather than thinner and clean-shaven like he was the night he assaulted her.

Gilley testified that he was certain Appellant was the one who assaulted him, stating that:

> [Appellant] looks more like what he looked like now than in that photo than when I saw him. In the photo, he has a lot more weight on him than when I saw him, so he didn't immediately stick out to me then.

> Plus, a lot of my recollection was the fact that he was wearing glasses. None of these individuals are wearing glasses so that just kind of changed the way that, I guess, in my mind saw him at the time.

6

I didn't want to make -- you know, I didn't want to pick someone out of the lineup that I wasn't a hundred percent sure, and I wasn't a hundred percent sure at the time.

Thus, along with Gilley's and Haggerty's successful identification of King and King's relationship with Appellant, it was reasonable for the jury to give greater weight to the two in-court identifications of Appellant.

With respect to the DNA evidence, Appellant contends that the State never proved that he was present at the scene when the assault occurred. Specifically, Appellant contends that the State's DNA evidence did not prove how the cell phone and the glasses ended up at Guerrero's residence.

The record contains conflicting testimony about Appellant's glasses. Testifying for Appellant, Audrey Adams testified that she saw two men beating up Appellant on March 30. Adams testified that, during this fight, she saw Appellant's glasses and phone get knocked to the ground. Adams stated that she picked up Appellant's phone and glasses and took them to Guerrero's apartment. Conversely, Gilley testified that Appellant's glasses were at Guerrero's apartment because he had knocked them off Appellant during their altercation.

Additionally, there was conflicting testimony about Appellant's location at the time of the altercation. Testifying for Appellant, Isaiah Araujo and Isaiah Rodriguez testified that Appellant could not have been at Guerrero's apartment at the time of the assaults because he was with his family at the Three Fountains Apartments. The conflicts in the testimony concerning Appellant's participation in the assault and his presence at the time at Guerrero's apartment were inherently credibility questions for the jury to resolve. The jury is solely responsible for resolving conflicts in the evidence. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. We presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d

7

at 778. Viewed in the light most favorable to the verdict, we hold that there is sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed aggravated assault against both Gilley and Haggerty. We overrule Appellant's first issue.

*Ineffective Assistance of Counsel*

In Appellant's third and fourth issues, he contends that he received ineffective assistance of counsel. In his third issue, he contends that his trial counsel was deficient because counsel failed to object to a hearsay statement from Guerrero that Detective Pipes testified about during the guilt/innocence phase. He asserts that this testimony violated his rights under the Confrontation Clause. In his fourth issue, Appellant contends that his trial counsel was deficient because counsel asked an improper commitment question during voir dire and then failed to use peremptory strikes to strike biased jurors.

To establish that trial counsel rendered ineffective assistance at trial, Appellant must show the following: (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged

ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

At the outset, we note that Appellant did not file a motion for a new trial. Thus, trial counsel has not had an opportunity to explain or defend his trial strategy in response to the matters that Appellant contends were deficient. Furthermore, trial counsel has not had an opportunity to explain what effect, if any, his alleged deficient conduct had on the manner in which he represented Appellant at trial. Appellant essentially contends that such an inquiry is unnecessary because there was no conceivable trial strategy to justify trial counsel's actions.

We begin with Appellant's contention that trial counsel was deficient because he failed to object to a hearsay statement made by Guerrero to Detective Pipes, identifying Appellant as the person that committed the assaults. "To demonstrate ineffective assistance based on a failure to object to evidence, appellant must show that the trial court would have committed harmful error by overruling the objection had trial counsel objected." *Donald v. State*, 543 S.W.3d 466, 478 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Trial counsel may have a strategic reason for not objecting to inadmissible evidence. *Id.* at 478–79 (citing *Lopez v.*

9

*State*, 343 S.W.3d 137, 141, 143–44 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)).

The record is silent with respect to trial counsel's decision not to object to Guerrero's statement to Detective Pipes. Even without Guerrero's statement, Detective Pipes identified King as being present at the time of the assaults. Detective Pipes also determined that King shared a child with Appellant and that she drove a car that matched the description of the one that many eyewitnesses saw leaving Guerrero's apartment. Furthermore, DNA testing established that Appellant was a contributor to the DNA detected on both the glasses and the cell phone found at Guerrero's apartment. Trial counsel may have considered it necessary to avoid objecting to Guerrero's hearsay statement as to not bring light to what Appellant calls the "the only pre-trial identification of Appellant." Therefore, the record fails to show that trial counsel's decision to not object to Guerrero's statement was not sound trial strategy. We overrule Appellant's third issue.

In his fourth issue, Appellant contends that his trial counsel was ineffective because trial counsel asked a question during voir dire that Appellant contends was an improper commitment question. Appellant also contends that trial counsel failed to use peremptory strikes to disqualify unfavorable jurors based on their response to the question.

The question was as follows:

I want you to assume the following: You have found a person accused guilty of aggravated assault in that the person -- you believe beyond a reasonable doubt that the person intentionally, knowingly, or recklessly caused serious bodily injury to another person by cutting them with a knife. Just assume with me that you've -- that you've checked it off in your mind or that you found -- this is with the deadly weapon version, that you found the person guilty and that he did then and there intentionally, knowingly, recklessly, cause bodily injury by stabbing the other person using the deadly weapon, which was capable

10

of causing death or serious bodily injury during the commission of the assault. Just assume with me that you've done that in your mind, and that's over with. My question to you is this: If you believe that, and I ask you to go into yourself, could you honestly ever fairly consider on such a conviction of aggravated assault with a deadly weapon as little as two years?

Appellant contends that trial counsel's question allowed the State to exploit the improper commitment question. Additionally, Appellant cites the responses of six veniremembers to counsel's question as being unfavorable to Appellant. Trial counsel challenged all six of the veniremembers for cause. The trial court denied the challenges for cause.[1] On appeal, Appellant contends that trial counsel should have exercised peremptory strikes against these six veniremembers.

The matter of conducting voir dire and exercising peremptory strikes is inherently a matter of trial strategy. *See State v. Morales*, 253 S.W.3d 686, 697–98 (Tex. Crim. App. 2008). The court noted in *Morales* that trial counsel might have a tactical reason for keeping a juror that appears to be unfavorable. *Id.* at 698. For example, trial counsel might have chosen to use his peremptory strikes on veniremembers that trial counsel felt were less favorable to Appellant. However, we do not have an inquiry into trial counsel's reasons for how he exercised his peremptory strikes. In the absence of such an inquiry, the record does not support a finding that trial counsel did not perform adequately. We overrule Appellant's fourth issue.

*Extraneous Evidence at Punishment*

In his second issue, Appellant asserts that the trial court erroneously admitted two extraneous offenses during the punishment phase of trial. Specifically, Appellant contends that the trial court erred by (1) failing to conduct a threshold

---

[1]We note that Appellant does not challenge the trial court's rulings on the challenges for cause.

11

inquiry concerning whether the jury could find beyond a reasonable doubt that Appellant committed the two alleged extraneous offenses and (2) failing to grant Appellant's request for a contemporaneous limiting instruction that would inform the jurors that they could only consider the extraneous offenses if they believed Appellant committed them beyond a reasonable doubt. Appellant further contends that the trial court's error caused him serious, irreparable harm because a limiting instruction was given too late.

Appellant first contends that the trial court erred because it did not make a threshold inquiry into whether a jury could find beyond a reasonable doubt that Appellant committed the first extraneous offense, a stabbing and shooting at MC Sports Bar. During her opening statement at the punishment phase of trial, the prosecutor stated that Abilene Police Detective Jonathan Merrick would be called to testify about a sports bar incident involving a stabbing and shooting. Appellant's trial counsel subsequently objected at the outset of Detective Merrick's testimony on the basis that the detective's testimony was inadmissible "unless a finding is made by the Court outside the presence and hearing of the jury that the Court is satisfied that [the extraneous offense] has been proven beyond a reasonable doubt." Appellant specifically requested "such a hearing." The trial court overruled Appellant's objection and request for a hearing. Detective Merrick then testified without further objection from Appellant.

Section 3(a)(1) of Article 37.07 of the Texas Code of Criminal Procedure allows the trial court to admit evidence during the punishment phase of any matter the court deems relevant to sentencing, including "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of

12

the crime or act." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2021). The trial court decides the threshold issue of admissibility and may not admit extraneous-offense evidence unless the evidence is such that a jury rationally could find beyond a reasonable doubt that the defendant committed the offense or could be held criminally responsible for the offense. *See Smith v. State*, 227 S.W.3d 753, 759 (Tex. Crim. App. 2007). We review this "gatekeeper" decision by the trial court for an abuse of discretion. *Thompson v. State*, 425 S.W.3d 480, 490 (Tex. App.— Houston [1st Dist.] 2012, pet. ref'd). Ultimately, the factfinder decides whether the extraneous offense was proven beyond a reasonable doubt. *Palomo v. State*, 352 S.W.3d 87, 94–95 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

The trial court satisfies its gatekeeper responsibility by making an initial determination that a jury could reasonably find, beyond a reasonable doubt, that the defendant committed the extraneous offense. *Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001); *see Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996). Article 37.07 does not require the trial court to conduct a hearing outside the presence of the jury to determine the admissibility of extraneous offenses during the punishment phase of trial. CRIM. PROC. art. 37.07, § 3(a)(1); *see Welch v. State*, 993 S.W.2d 690, 697 (Tex. App.— San Antonio 1999, no pet.). "The trial court may determine whether there is sufficient evidence through an oral or written proffer of evidence, motions, pretrial hearings, and the trial, including any bench conferences." *Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.).

The circumstances in this case are similar to those in *Mann*. In *Mann*, the defense attorney requested a hearing prior to the testimony of the State's punishment witness. 13 S.W.3d at 93–94. At the time the request was made, the trial court only had the prosecutor's oral statement of what he believed the punishment witness

would testify about.  *Id.*  The Austin Court of Appeals determined that the defendant was not entitled to a hearing outside the presence of the jury on the admissibility of the witness's testimony and that the prosecutor's proffer of what the testimony would consist of was sufficient for the trial court to determine if the witness's testimony was admissible.  Likewise, we hold that Appellant was not entitled to a hearing outside the presence of the jury to determine the admissibility of Detective Merrick's punishment testimony.  *See id.* at 94; *see also Arzaga*, 86 S.W.3d at 781; *Welch*, 993 S.W.2d at 697.  Here, the prosecutor's opening statement constituted a sufficient proffer of what Detective Merrick would be testifying about during punishment.  Accordingly, the trial court did not abuse its discretion by overruling Appellant's objection to Detective Merrick's testimony.

Appellant additionally contends that the trial court erred in denying both of his requests for a limiting instruction at the time he requested them.  Specifically, Appellant contends that the jury should have been instructed of the State's burden of proving the extraneous offenses beyond a reasonable doubt contemporaneously with Detective Merrick's and Detective Cowan's testimony.   Appellant relies on *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996), in support of his contentions.  Appellant's reliance on *Rankin* is misplaced.

As later noted in *Jackson v. State*, *Rankin* involved extraneous-offense evidence offered for a limited purpose.  992 S.W.2d 469, 477 (Tex. Crim. App. 1999) (citing *Rankin*, 974 S.W.2d at 711–13).  The court held in *Jackson* that "*Rankin*'s rationale for giving a contemporaneous instruction does not apply to burden of proof issues."  *Id.*  The court held that "a trial court is not required to give an instruction

concerning the burden of proof at the time evidence of unadjudicated offenses and bad acts is admitted [during the punishment phase]."[2] *Id.* at 478.

Here, Appellant requested the trial court to instruct the jury on the State's burden of proof regarding the extraneous offenses contemporaneously with Detective Merrick's and Detective Cowan's testimony. Under *Jackson*, the trial court is not required to contemporaneously instruct the jury on the State's burden of proof when evidence of extraneous offenses is introduced. *See id.* Therefore, Appellant was not entitled to a contemporaneous instruction at the time the State introduced the evidence of the extraneous offenses.

Moreover, the trial court ultimately instructed the jury to disregard the testimony of Detective Merrick and Detective Cowan. Detective Merrick and Detective Cowan testified at the end of the third day of trial.[3] At the beginning of the proceedings the next day, the prosecutor advised the trial court that the jury should be instructed to disregard the punishment testimony from Detective Merrick and Detective Cowan because of an issue with a reluctant witness and an issue with the notice that was provided to Appellant. Pursuant to the request, the trial court instructed the jury to disregard the testimony of Detective Merrick and Detective Cowan and "not consider it for any purpose."

An instruction to disregard testimony is generally sufficient to cure the improper admission of evidence. *Waldo v. State*, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988). When the jury is instructed to disregard testimony, we are to presume

---

[2]The holding in *Jackson* is not to be confused with the requirement for an instruction in the court's charge on punishment that the jury must not consider evidence of an extraneous crime or bad act unless it is shown beyond a reasonable doubt. In this regard, the trial court has a sua sponte duty to include this instruction in the court's charge. *See Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007). Here, the trial court included a "beyond a reasonable doubt" instruction in the charge on punishment.

[3]We note that the testimony of Detective Merrick and Detective Cowan spanned only twelve pages of the reporter's record.

that it will follow the instruction. *Id.* (citing *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)). However, an instruction to disregard will not cure the error "in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Id.* (citing *Harris v. State*, 375 S.W.2d 310 (Tex. Crim. App. 1964)). The extraneous offense evidence from Detective Merrick and Detective Cowan was not so extreme as to be beyond the reach of the trial court's instruction to the jury to disregard it for any purpose. Thus, any error in the admission of their testimony was harmless. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgments of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

November 18, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.