Neil Hampton ROBBINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–99–120 CR.

Court of Appeals of Texas,
Beaumont.

Submitted June 26, 2000.

Decided Aug. 30, 2000.

Publication Ordered Sept. 15, 2000.

Brian W. Wice, Houston, for appellant.

Michael A. McDougal, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

A jury found Neil Hampton Robbins guilty of capital murder. As the State did not seek the death penalty, the Court sentenced Robbins to confinement for life in the Texas Department of Criminal Justice, Institutional Division. Robbins raises seven points of error on appeal.

■ Point of error one challenges the legal sufficiency of the evidence to support the conviction. When reviewing the legal sufficiency of the evidence, we look at the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Robbins' household consisted of his mother, Bonni Morris, his girlfriend, Barbara Hope, and Barbara's 17–month–old daughter, Tristen Rivet. Robbins and Hope argued frequently throughout their relationship, separating and reuniting several times. Robbins's personality changed after he began taking Vicodin following a motor vehicle accident. Towards the end of November Tristen would no longer let Robbins pick her up. Other problems contributed to the growing instability of the family relationship. Morris had trouble tolerating a child in the house. Hope's work as a topless dancer made Robbins jealous. She quit to work as a waitress, then returned to topless dancing for financial reasons. When Hope conceived, Robbins wanted her to terminate the pregnancy because they couldn't afford another baby. In February, Hope got an abortion because Robbins wouldn't be around for her. Hope could not afford the trailer and land she had been buying, and on the day Tristen died she was looking for a new trailer to place on less expensive land.

Between November 1997 and February 1998, Tristen received a series of minor injuries while in Robbins's care. First, she got a black eye while Robbins was babysitting. Robbins claimed Tristen slipped while he was bathing her. Then Hope was taking a nap while Robbins watched Tristen. When Hope awoke, Tristen's leg was so badly injured she couldn't stand up; Robbins claimed he accidentally stepped on her. Then Tristen appeared with bruises in her ear and on the side of her face. Robbins claimed he took her in the shower with him, to keep an eye on her, and she slipped. In retrospect, Hope realized Tristen could not have received that bad of a bruise from falling.

On May 12, 1998, Robbins was alone with Tristen for much of the day. Hope could hear Tristen talking before she left that morning. Tristen was behaving normally during a visit between Robbins and his parole officer around 2:00. Robbins sounded shaky and excited when Hope talked to Robbins sometime after 3:30 p.m. He asked Hope when she was coming home because he had things to do. When

Hope arrived home, between 4:00 and 4:30 p.m., Robbins told her Tristen was taking a nap. They argued briefly and Robbins left. When Hope looked in on Tristen at 5:40 p.m., she assumed the child was sleeping because Tristen didn't move. When she checked again at 6:00, she found Tristen still in the same position and discovered the child was ice cold and her lips were blue. A pillowcase covered one eye, part of her nose and mouth.

Hope carried Tristen into the living room and attempted to breathe air into the baby, causing pink fluid to come out of Tristen's mouth. Hope carried her child out into the front yard and called 911 while Morris and a neighbor tried CPR. The emergency medical technicians arrived and determined that Tristen was dead. A stiff neck indicated the first signs of rigor mortis. She was pronounced dead at the hospital at 6:53 p.m.

The deputy who took the report noticed Hope was visibly upset, but Robbins was "kind of emotionless" and looked down at the ground. Robbins claimed he put Tristen down for a nap at 5:30 p.m. The emergency room physician noted that rigor mortis had not set in but that the child had been dead for some time. He noted lividity on the back of the child. The doctor noticed Hope was traumatized but thought Robbins behaved strangely, hiding his head behind Hope's and then rubbing her in an erotic caress while Hope and the doctor discussed Tristen's demise.

The medical examiner who performed the autopsy made the following findings: 1) asphyxia due to compression of chest and abdomen; 2) terminal aspiration; 3) multifocal hemorrhages of the cortex and interlobular septae of thymus; 4) focal recent hemorrhages of tonsils; 5) multiple recent hemorrhages within subcutaneous tissues of back and neck; 6) small subcapsular recent hemorrhage of left kidney; and 7) recent hemorrhage between intercostal muscles of 11th and 12th ribs, bilaterally, greater on left than right. Dr. Moore testified the child died from lack of oxygen. She ruled out sudden infant death syndrome as a possible cause of death. From the bruises on the back of the body and the damage to the kidney, Dr. Moore determined death was brought about by compression of the chest and abdomen. The bruising could not have occurred by CPR performed after death.

The State proved that someone pressed the life out of Tristen Rivet. The State proved that person was Robbins through testimony that established Robbins was alone with Rivet when she died by human means. A rational trier of fact could find Robbins committed capital murder as alleged in the indictment. Point of error one is overruled.

Point of error two challenges the factual sufficiency of the evidence to support the conviction. In reviewing the factual sufficiency of the evidence, we review all the evidence impartially, comparing the evidence which tends to prove the existence of an elemental fact in dispute to the evidence which tends to disprove that fact, and determine whether the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996).

Rollins adduced evidence supporting a theory that the damage to the child's body occurred during the attempt to revive her. A medical examiner who testified as a defense expert could not determine the cause of death but concluded death was not due to asphyxia because the autopsy did not reveal petechiae in the eye. Dr. Bux used EKG readings to place time of death sometime after 5:30 p.m., after Rollins left the house. Rollins points to evidence that Hope was treated for depression. He also points to evidence that he had a loving relationship with the deceased. From this evidence and the other evidence developed in the trial, Rollins developed a theory that either Hope inten-

tionally killed Tristen after Rollins left, or the women accidentally killed Tristen while trying to revive her from an unexplained coma. The evidence supporting these alternate hypotheses is not so overwhelming that we could conclude that the verdict is contrary to the evidence. Likewise, the evidence supporting the State's allegation that Robbins intentionally asphyxiated Tristen is not so weak that our impartial review of the evidence reveals the verdict is manifestly unjust. Point of error two is overruled.

■ Point of error three contends the trial court erred in holding the State did not exercise a peremptory strike to exclude veniremember R.K. in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1716–17, 90 L.Ed.2d 69 (1986); *see also, Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (holding a non-minority defendant has standing to bring an equal protection challenge for a venire member). A *Batson* challenge is determined in three steps: 1) the opponent of the peremptory challenge must meet the burden of production by making out a prima facie case of racial discrimination; 2) the burden of production then shifts to the proponent of the strike to respond with a race-neutral explanation; and 3) if a race-neutral explanation is proffered, then the trial court must decide whether the opponent of the strike has proved purposeful racial discrimination, with the burden of persuasion remaining on the opponent. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834, 839 (1995). Since the trial court's decision turns largely on an evaluation of credibility, we must give that decision great deference and will not disturb it unless it is clearly erroneous. *Robinson v. State,* 851 S.W.2d 216, 226 (Tex.Crim.App. 1991).

■ The State used a peremptory strike to remove R.K., the only black person on the venire, from the panel. Robbins made a prima facie showing of purposeful discrimination. The prosecutor explained that the State exercised a peremptory strike against R.K. because her husband does counseling for wayward youths. Robbins argues that the explanation is not supported by the evidence because R.K. stated there was no correlation between the case and the counseling she and her husband did in connection with his work as a pastor. In response to a question posed to the entire venire, whether anyone close to them had been charged or convicted of a serious offense, R.K. volunteered that they were very close to a boy who was convicted in Harris County. From this, the prosecutor surmised R.K.'s husband counsels wayward youths. Robbins argues the group trait relied upon by the prosecutor was not shown to apply to R.K. because she stated the police and prosecutors properly handled the matter about the boy in Harris County.

The Court of Criminal Appeals has held the appellant failed to meet its burden of persuasion in a case where the State's reason for striking a juror proved to be completely erroneous. *Ford v. State,* 1 S.W.3d 691, 694 (Tex.Crim.App.1999). The Court noted that the appellant never cross-examined the prosecutor, so his explanation remained uncontradicted and facially plausible. *Id.* In this case, during the hearing defense counsel argued that the prosecutor had treated R.K. disparately from the other venire members, who were not asked about their spouses. Our review of the record reveals that R.K. volunteered this information in response to questions posed to the venire generally. We hold the trial court could have reasonably concluded that the State's race-neutral explanation was sincere and that the peremptory strike against R.K. was not racially-motivated. Point of error three is overruled.

Robbins's remaining points of error concern the admission of the testimony about the injuries Tristen received before the day she died, offered by the State as evi-

dence of the prior relationship between the defendant and the murder victim. *See* TEX.CODE.CRIM .PROC.ANN. art. 38.36 (Vernon Pamph.2000). The trial court conducted a hearing outside the presence of the jury before ruling the evidence was admissible and denying a request for a limiting instruction. We are satisfied that the trial court understood that defense counsel's objections were based upon Texas Rules of Evidence 401, 404(b), and 403, and that counsel requested a limiting instruction under Texas Rule of Evidence 105, thus preserving for review the errors raised in points of error four through seven. TEX. R.APP.P. 33.1(a)(1)(A).

■ Point of error five urges the evidence was not relevant. TEX.R.EVID. 401. Barbara Hope testified that on three separate occasions Tristen received a minor injury while alone with Robbins. Each time Robbins admitted inflicting the injury, but explained how each accident occurred. The evidence of the change in the relationship between Robbins and the deceased was relevant to Robbins's state of mind, as the State had the burden of proving that Tristen died as the result of an intentional act of Robbins's, rather than accident or negligence. The evidence of prior injuries inflicted on the deceased by the accused has a tendency, however slight, to prove that the fatal injury was not an accident. Point of error five is overruled.

Point of error six contends the evidence, if relevant, was inadmissible because it was extraneous to the offense for which Robbins was tried. TEX.R.EVID. 404(b). Evidence of a prior relationship between the accused and the victim in a murder prosecution may be excluded under Rule 404(b). *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim.App.1999). In this case, however, the evidence of previous injuries was admissible for a purpose other than character conformity. Robbins claimed all he did was put Tristen down for her nap, but somehow Tristen died of compression asphyxia. The State had to prove Tristen's

death was the result of the intentional act of the defendant, rather than an accident on his part or the intentional act of Barbara Hope. The evidence that in the months before her death Tristen received three injuries that Robbins claimed were accidentally inflicted was probative of intent and lack of accident. Rather than establish that Robbins is a violent man for the purpose of proving he was acting in conformity with his violent character on the date in question, the evidence of his interaction with the victim was probative of intent and lack of accident. Point of error six is overruled.

■ Point of error seven argues the probative value of the evidence was outweighed by its prejudicial effect. TEX. R.EVID. 403. Factors considered in a Rule 403 analysis include: 1) how compellingly the extraneous act evidence serves to make a fact of consequence more or less probable; 2) the potential for the extraneous act evidence to irrationally but indelibly impress the jury; 3) the trial time expended developing the evidence; and 4) the strength of other evidence available to prove a fact of consequence. *Santellan*, 939 S.W.2d at 169. Robbins argued that the evidence of previous injuries has no relevance beyond showing he was not as careful as a babysitter should be but had the prejudicial effect of making the jury believe he was a bad person.

The extraneous act evidence showed that Tristen was repeatedly injured while alone with the defendant. This was a circumstance of considerable import considering one of the two caretakers of the child was the last to see her alive; either the defendant, when he laid her in her bed, or Hope, when she tried to waken Tristen. The nature of the misconduct is far less onerous than that with which Robbins was charged. The evidence was admitted quickly and comprises a small part of a voluminous record. The defense developed a theory that the injuries noted on the autopsy report were caused by attempts to resuscitate the child. State of-

fered expert testimony on cause of death, but that testimony was controverted by a defense expert who testified that Tristen's death was not caused by compression asphyxiation. The effect of the evidence of Tristen's previous injuries is not unfairly prejudicial because the prejudicial effect lies in its probative value rather than an unrelated matter. The trial court's determination was reasonable in view of all of the relevant facts. Point of error seven is overruled.

Point of error four contends the trial court erred in denying Robbins's mid-trial request for a limiting instruction that the jurors could not consider any evidence as to extraneous acts unless they first found beyond a reasonable doubt that the acts occurred and that Robbins committed such acts. Texas Rule of Evidence 105 requires a contemporaneous limiting instruction to be given when evidence is offered for a limited purpose. TEX.R.EVID. 105(a). Because evidence of extraneous acts is admissible for some purposes but inadmissible for others, on request the accused is entitled to a mid-trial limiting instruction on extraneous offense evidence. *Rankin v. State*, 974 S.W.2d 707, 711–12 (Tex.Crim.App.1996). The trial court erred in denying the appellant's request.

We cannot reverse the judgment unless the trial court's denial of Robbins's request for a contemporaneous instruction affected a substantial right. TEX.R.APP.P. 44.2(b). We must consider whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). The jury charge included an instruction that "you cannot consider such other transactions or acts, if any, for any purpose unless you find and believe beyond a reasonable doubt that the defendant participated in such transactions or committed such acts, if any; and even then you may only consider the same for the purpose of determining intent or absence of accident or as relevant facts and circumstances surrounding the previous relationship existing between the defendant and the deceased."

Although the evidence was admitted early in the trial, the charge contained an instruction proper both in its scope and in the burden of proof. Rule 105 addresses parties and purposes, not burdens of proof. *Jackson v. State*, 992 S.W.2d 469, 477 (Tex.Crim.App.1999). For that reason, the trial court is not required to give an instruction concerning the burden of proof at the time punishment phase evidence of unadjudicated offenses and bad acts is admitted. *Id.* at 478. In *Jackson*, the Court of Criminal Appeals used Rule 404(b) guilt phase extraneous offense evidence as an example when a contemporaneous instruction is necessary. *Id.* at 477. The danger inherent in Rule 404(b) evidence lies in the possibility that the jury may draw inferences about the defendant's guilt based upon character conformity that the jury charge will not successfully remove. *Id.* Although the denial of a request to limit the consideration of the extraneous acts to intent or lack of accident might have had an injurious effect on the trial, the contemporaneous instruction requested by Robbins addressed only the burden of proof for the extraneous act evidence, not its scope under Rule 404(b). The particular instruction requested by the appellant would not affect the jury until it began its deliberations.

Robbins admitted injuring Tristen on the three occasions in question. That he committed the extraneous acts was not a contested issue, the issue in controversy being whether the injuries were inflicted accidentally or intentionally. Robbins did not request a mid-trial instruction limiting the scope of the evidence to intent or lack of accident. We hold the denial of the instruction did not affect a substantial right. Point of error four is overruled. The judgment of the trial court is affirmed.

AFFIRMED.

**252**

STOVER, Justice, concurring.

I concur in the result, but wish to note, in regard to point of error four, a different reading of the Texas Court of Criminal Appeals' opinion in *Jackson v. State,* 992 S.W.2d 469, 477–78 (Tex.Crim.App.1999). There, as I read *Jackson,* the Court distinguishes between the following:

(1) the timing of the trial judge's instruction to the jury regarding the limited purpose for which the jury may consider extraneous offense evidence, and

(2) the timing of the trial judge's instruction on the "beyond reasonable doubt" burden of proof for extraneous evidence.

Previously, the Court of Criminal Appeals expressly held in *Rankin v. State,* 974 S.W.2d 707, 713 (Tex.Crim.App.1996), that, if requested, the limiting instruction detailing the *purpose* for which the jury may consider the extraneous offense evidence, i.e., to show motive or intent, must be given contemporaneously with its admission.

The analysis in *Jackson* reiterates the *Rankin* holding that the trial judge must give the limiting instruction on the *purpose* for which the extraneous offense is admitted contemporaneously with its admission. With regard to the limiting instruction on the burden of proof for extraneous offenses, however, *Jackson* holds that the trial judge is not required to contemporaneously give that instruction. *Jackson,* 992 S.W.2d at 478. Although the analysis in *Jackson* is in the context of the punishment phase of the trial, I believe the holding is not restricted to that phase, but is, instead, instructive on the *timing* of the *burden of proof* instruction on extraneous offenses for both phases of trial.

If *Jackson* is construed to apply to both the guilt/innocence and punishment phases, the trial judge herein did not err by failing to give the burden of proof instruction on the extraneous offenses when they were first admitted; the appropriate instruction was given in the court's charge to the jury at the conclusion of the guilt/innocence phase. That being the case, no harm analysis would be necessary. I, therefore, concur in the majority's overruling of point of error four, but note that *Jackson* may stand for the proposition that the trial judge is not required to give a limiting instruction on the burden of proof for extraneous offenses until the court's charge.