NO. 07-00-0116-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



SEPTEMBER 17, 2002



______________________________




FRANCISCO GARCIA, JR., APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B12033-9504; HONORABLE ED SELF, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, SJ. (1)


 Appellant Francisco Garcia, Jr. was convicted of capital murder in the death of his
five-month-old stepdaughter, as well as serious bodily injury to a child with respect to the
same incident. He was sentenced to life imprisonment in the Institutional Division of the
Department of Criminal Justice for the offense in the first count of the indictment and 99
years confinement for the offense in the second count with the sentences to run
concurrently. He appeals from those convictions in eight issues, in which he challenges
the legal sufficiency of the evidence to sustain the conviction of capital murder in his first
four issues, the factual sufficiency of the evidence to sustain the conviction of capital
murder in his fifth issue, and the factual sufficiency of the evidence to sustain the
punishment imposed in his sixth issue. In his seventh and eighth issues, he complains that
the trial court erred in overruling his motion to find that section 19.03(a)(8) of the Penal
Code is unconstitutional and in declaring Irene Ramos to be a defense witness when called
to testify during the defense's case-in-chief. Disagreeing with appellant that reversal is
required, we affirm the convictions.

 On April 3, 1995, appellant, who had recently been laid off from his job, was left
alone to care for two of the children of his common-law wife, Irene Ramos, while she was
at work. Those children included 15-month-old Phillip Ramos, whose paternity was listed
on his birth certificate as unknown, and five-month-old Amanda Garcia, whose father was
Raymond Garcia, appellant's brother. (2) The day before, Amanda had been hit in the face
with a toy truck by Phillip and taken to the emergency room, where she was later released. 
Amanda did not appear to be suffering any effects from that incident, other than a bruise
on the side of her face, while in appellant's care the next day. Irene called appellant
sometime during the day to tell him that she could not take him to Lubbock to obtain a copy
of his birth certificate and social security card because her replacement had not arrived at
work. She told him to call the babysitter to come get the children. Appellant got the
children ready to go to the babysitter when he noticed Amanda was having trouble
breathing. He called his wife at work and told her to come home. Meanwhile, the
babysitter arrived, and he told her to go get Irene. When Irene arrived at the house, she
instructed appellant to call 911. Emergency personnel transported Amanda to the hospital,
where she died several days later from blunt force injuries to the head caused either by
impact or by shaking. 

 In his first four issues, appellant challenges the legal sufficiency of the evidence by
claiming his conviction (3) (1) is in violation of article 38.03 of the Code of Criminal Procedure
and section 2.01 of the Penal Code, (2) deprives him of due process of law under both the
United States and Texas Constitutions, (3) deprives him of effective assistance of counsel
under both the United States and Texas Constitutions, and (4) deprives him of effective
compulsory process of law under both the United States and Texas Constitutions. In his
fifth issue, appellant challenges the factual sufficiency of the evidence. Appellant argues
his first four issues together, and we will likewise discuss them in the same manner. We
will also discuss appellant's factual sufficiency challenge at the same time. Further,
appellant does not specifically refer in his argument to the statutory and constitutional
violations he claims in his issues other than to cite that article 38.03 of the Code of Criminal
Procedure and section 2.01 of the Penal Code do not permit a person to be convicted of
an offense unless each element is proved beyond a reasonable doubt. We will therefore
not discuss those statutory and constitutional issues separately and will only address them
as they relate to the standard of review we are required to use in our analysis of appellant's
issues. 

 The standard by which we review the legal sufficiency of the evidence is whether,
after viewing the evidence in the light most favorable to the prosecution, any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). 
Under a factual sufficiency review, we neutrally examine all of the evidence and determine
whether it is so weak as to be clearly wrong and manifestly unjust or the adverse finding
is against the great weight and preponderance of the evidence. Johnson v. State, 23
S.W.3d 1, 11 (Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 135 (Tex.Crim.App.
1996). 

 With respect to the first count of the indictment, the jury was instructed that, to
convict appellant, they must find that he intentionally or knowingly caused the death of
Amanda Garcia by hitting her with his hand or shaking her. The jury was further instructed
that a person acts intentionally with respect to a result of his conduct when it is his
conscious objective or desire to cause the result and acts knowingly with respect to the
result of his conduct when he is aware that his conduct is reasonably certain to cause the
result. Appellant argues that there is not any evidence to substantiate the allegations with
respect to his mental state and his ability to cause the injuries sustained. In support of this
argument, he refers to testimony that he cared for the children, prepared their meals,
washed their clothes, played with them, planned parties for them, and bought them gifts. 
He also cites to evidence that he rode with Amanda to the hospital, thereby demonstrating
his concern. Further, he posits, even though a pathologist for the State testified that the
force which caused Amanda's death could have come from a high fall or from a strong
blow from the hand, there is no evidence concerning such a fall or testimony as to
appellant's strength. 

 However, appellant voluntarily gave a statement (4) to police in which he admits he
was frustrated because Amanda was crying and would not take her bottle or pacifier. 
Further, he concedes he did not want to pick up Amanda because he was upset that she
was his brother's child and was mad about seeing pictures of his brother in a photo album 
the night before. During times when appellant had been in prison, Irene and his brother
had affairs. Appellant described his actions with respect to Amanda as follows:

 * * *

 I just stood there in front of Amanda crying and got more mad and the rage
built up inside of me. I lost control of everything and I slapped Amanda
across the face with my left hand. I was in so much rage that I dont [sic]
know how hard I hit her. I hit her right across the bruise that she had where
Philip had hit her with the toy. Right after this Amanda stopped crying. 


 * * *


 Amanda was in the hospital two days before she died there. The doctors
told us that she had died as a result of the head injury. When the doctors
told us this I got all scared and thought why had this happened to me. I
knew that she had died as a result of me hitting her across the face. 


 When I hit Amanda across the face that morning I didnt [sic] intend to kill her. 
I guess that when I slapped Amanda that morning I was getting back at my
brother. 

* * *



 There was also evidence that appellant had not wanted to take Amanda to the
hospital for the injury from the toy truck the night before and sat in the car while Irene took
the child into the hospital to be examined. Further, although he admits that after striking
Amanda, she "was just laying there with her eyes open," he merely placed her in the crib. 
When he later discovered that she was gasping for air and non-responsive, he called Irene
to come home, but did not call 911 until after she arrived and told him to call. At the
hospital, he told Irene to stop crying because people would think they had done something
to the child. 

 Dr. Jerry Spencer, the Lubbock County Medical Examiner at the time of the death,
stated that Amanda's injuries were very severe and would require a severe impact or
severe shaking. Further, a child would generally have to fall at least 10 feet to receive the
kind of injuries that Amanda had, and the head was impacted while it was still. Although
the injuries were consistent with being hit with an open hand on the side of the head, they
were not consistent with a 15-month-old child hitting Amanda with a toy truck. Additionally,
Dr. Richard E. George, Jr., the neurosurgeon who operated on Amanda, described the
injuries:

 When we have patients who have bleeding over the surface of the brain,
when we have bleeding into the eyes, that is an injury that is associated with
severe shaking. It is a forceful event that causes the vessels to hemorrhage
in the eyes, themselves, and also for the blood vessels over the surface of
the brain to break and cause bleeding in the brain. It can injure the brain,
lacerate the brain, or tear the brain. So that was suggestive of a shaking
injury.


 The blow to the back of the head suggested a significant impact to the back
of the head. There was also the bruising in the front that suggest [sic] that
there had been a blow at the front of the head as well. 


 When I assessed Amanda, I felt that she had sustained a severe shaking
injury, with the evidence of trauma to the back of the head that appeared to
be what we would call a shaken impact syndrome where they're shaken in
a forceful blow to the back of the head. And that was our diagnosis at the
time. 


He further opined that for hemorrhaging on the surface of the brain and into the eyes to be
present, forceful shaking and not a single blunt blow to the head was required. 

 Mental culpability for murder must generally be inferred by the circumstances under
which the death occurred. Matter of V.M.D., 974 S.W.2d 332, 347 (Tex.App.--San Antonio
1998, no pet.). Intent to kill may be inferred from acts, words, and the conduct of the
accused or from the extent of the injuries and relative size and strength of the parties. 
Patrick v. State, 906 S.W.2d 481, 487 (Tex.Crim.App. 1995), cert. denied, 517 U.S. 1106,
116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). Statements by the accused to the effect that he
did not mean to kill may not be sufficient to overcome evidence of intent created by the
circumstances. See Wesbrook v. State, 29 S.W.3d 103, 112 (Tex.Crim.App. 2000), cert.
denied, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001); Motilla v. State, 38 S.W.3d
821, 824-26 (Tex.App.--Houston [14th Dist.] 2001), rev'd on other grounds, No. 598-01, slip
op., 2002 WL 1380912 (Tex.Crim.App. June 26, 2002). The same is true of evidence that
the accused had a loving relationship with a child victim. See Robbins v. State, 27 S.W.3d
245, 248-49 (Tex.App.--Beaumont 2000, pet. granted). 

 Given the facts that appellant had been alone with the child prior to her experiencing
breathing difficulties, his description of his rage and his admission of having struck her, and
the severity and extent of Amanda's injuries, the evidence is both legally and factually
sufficient to support the verdict. A violent assault on a child may reasonably be expected
to cause death. Lindsey v. State, 501 S.W.2d 647, 648 (Tex.Crim.App. 1973), cert.
denied, 416 U.S. 944, 94 S.Ct. 1953, 40 L.Ed.2d 296 (1974). Therefore, a jury could have
rationally found that appellant intentionally or knowingly caused the death of Amanda within
the definitions prescribed, and that finding is not clearly wrong or manifestly unjust. 
Appellant's first five issues are overruled. 

 In his sixth issue, appellant challenges the factual sufficiency of the evidence to
sustain the punishment assessed. In making his argument, he merely asserts that he was
a relatively young age at the time of the offense (5) and does not have such a criminal history
as to render him unfit for rehabilitation. Further, he states that his acts do not show malice
toward the victim, but show him as a loving and caring parent who changed Amanda's
diapers, fed her, bathed her, washed her clothes, planned parties for her, and purchased
gifts for her. 

 Appellant does not specify if he is challenging the punishment assessed for both
convictions. Since he was charged with capital murder and the State sought the death
penalty, the statutorily prescribed punishment was either death or imprisonment in the
Institutional Division for life. Tex. Pen. Code Ann. § 12.31(a) (Vernon 1994). The jury
answered "yes" to the following special issues: (1) whether there is a probability appellant
will commit criminal acts of violence that constitute a continuing threat to society, and (2)
whether there are sufficient mitigating circumstances to warrant life imprisonment rather
than death. Because of the jury's answer to the second special issue, appellant received
the lesser of the two mandatory punishments for the crime. It has also been held that a
court should not review a factual sufficiency challenge to a finding of probability of future
dangerousness. McGinn v. State, 961 S.W.2d 161, 169 (Tex.Crim.App. 1998). Therefore,
we will assume that appellant is contesting the sufficiency of the evidence to support his
conviction for serious bodily injury to a child in which the jury was given the option of
assessing a punishment of not less than 25 years or more than 99 years imprisonment,
with the jury choosing the maximum punishment. 

 The evidence at the punishment hearing showed appellant had been previously
convicted of burglary of a building, for which his probation was revoked. He had also been
convicted of burglary of a habitation and forgery, which were alleged in the indictment for
enhancement purposes. Additionally, Irene testified that appellant assaulted her when she
was four months pregnant with her son Phillip and that two weeks after the birth of her
daughter Ashley, she had left the baby with appellant and when she returned the baby had
a big lump on her head, which appellant claimed not to know about. Ashley was in the
hospital two weeks with the injury, even though the investigation of Child Protective
Services was inconclusive. Further, Irene's father, Joe Ramos, stated that his
granddaughter Angela once came up to him with blood in her mouth and nose and,
because he believed appellant hit her, he slapped appellant. Appellant's mother
Guadalupe Garcia also averred that on one occasion when appellant was angry with Irene,
her other son was trying to calm appellant, she got in the way and was punched in the
nose by appellant. Multiple law enforcement witnesses additionally testified that
appellant's reputation for being peaceful and law abiding was bad, although he was
apparently well behaved as a prisoner. Even in light of the evidence pointed out by
appellant in his favor, he had multiple prior criminal convictions and there was evidence of
prior assaults from which the jury could have found that he had a violent nature. Thus, we
cannot find that the evidence was factually insufficient to support a sentence at the
maximum end of the range of punishment allowed by law. Appellant's sixth issue is
overruled.

 Appellant complains in his seventh issue that section 19.03(a)(8) of the Penal Code,
under which he was prosecuted for capital murder, is unconstitutional. That section
provides that a person commits an offense if he commits murder as defined under section
19.02(b)(1) of the Penal Code and the person murders an individual under six years of age. 
Tex. Pen. Code Ann. § 19.03(a)(8) (Vernon 1994). Appellant argues that the statute
violates the equal protection laws of the federal and state constitutions because the
selection of the age of six years is arbitrary and wrongfully discriminates against those
similarly situated because a child who is six years and one day old is not more able to
protect himself than a child under six. Further, an elderly handicapped person is not
necessarily more able to protect themselves than a child under the age of six years. 
Appellant does not assert that the Texas Constitution provides greater protection than the
United States Constitution, so we will treat those claims as one. 

 This issue was addressed in Henderson v. State, 962 S.W.2d 544 (Tex.Crim.App.
1997), cert. denied, 525 U.S. 978, 119 S.Ct. 437, 142 L.Ed.2d 357 (1998), (6) in which the
Court of Criminal Appeals found that the State has a legitimate and compelling interest in
protecting the well-being of its children and, in doing so, may designate a sub-class of
young children. Id. at 562. The court then turned to the question of whether section
19.03(a)(8) is rationally related to serve that interest. In doing so, the court noted that for
a child-murderer provision to have clarity, a numerical line must be drawn somewhere. Id. 
Further, children under the age of six are usually still living at home, are thus particularly
vulnerable to caregivers and, even though the line could have been drawn at a different
age, that fact does not invalidate the statute. Id. We therefore overrule appellant's
seventh issue.

 In his eighth and final issue, appellant asserts that the trial court erred in declaring
Irene to be a defense witness when she was recalled by him during his case-in-chief. After
Irene testified for the State, appellant reserved his questions for the witness. When the
State rested and appellant commenced presentation of his case, he called Irene as a
witness. During his examination of Irene, the State objected to appellant leading the
witness. Appellant responded that it was cross-examination, and he was therefore
authorized to do so. However, the court sustained the objection because appellant had
called the witness. Later, the State again objected to a question as leading, which the
court sustained without further objection from appellant. At the end of Irene's testimony
during the guilt-innocence phase, appellant voiced his objection "with respect to the
declaration by the Court that Irene Ramos had become a witness for the Defendant,
thereby allowing the State to cross-examine and lead the witness." The court responded
as follows:

 Well, if you wanted to cross examine the witness, and you wanted to reserve
your cross examination questions, then you should have recalled that
witness before the State rested its case. Once the State rested its case,
then your reservation of cross examination then ended. If you want to call
her in your case-in-chief, that makes her your witness.


 Generally, leading questions should not be used on direct examination, except as
necessary to develop the testimony, although there is a right to lead a witness on cross-examination. Tex. R. Evid. 611(c). However, appellant must show an abuse of discretion
by the trial court in permitting the use of leading questions on the part of the State in what
he impliedly argues was redirect examination by showing he was unduly prejudiced by the
questions. Wyatt v. State, 23 S.W.3d 18, 28 (Tex.Crim.App. 2000). Harm must also be
demonstrated with respect to the trial court's failure to permit appellant to lead on cross-examination. See Craig v. State, 594 S.W.2d 91, 96 (Tex.Crim.App. 1980). 

 No bill of exception was made during trial. Appellant argues in his brief that he was
harmed because he was deprived of "leading the witness to testify concerning certain
matters elicited from her when counsel for Appellant and his investigator traveled some
200 miles to interview her." Nevertheless, he does not specify what this information was,
other than to state that he sought to explore her feelings that the death penalty should not
be sought. Since appellant was not sentenced to death, he was not harmed by the lack
of this testimony. Appellant asserts that other specific examples "may be ascertained by
re-reading her testimony at trial of the objections of the District Attorney." It is appellant's
responsibility to apprise this court of the harm incurred by informing us of the specific
testimony he sought to elicit but was deprived of, citing to those instances in the record,
and providing an explanation as to why the error was prejudicial or harmful. See Alvarado
v. State, 912 S.W.2d 199, 210 (Tex.Crim.App. 1995). This court is not required to search
the record and make speculative assumptions as to any harm appellant may be claiming. 
Thus, assuming arguendo, that the trial court erred and that such error was properly
preserved at trial, appellant has failed to demonstrate any harm. We therefore overrule
his eighth issue.

 Having overruled all of appellant's issues, we affirm the judgment of the trial court.


 John T. Boyd

 Senior Justice

Do not publish. 

 






1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

2. There were also two other children living in the home who were not present on that
particular day. They were six-year-old Angela Garcia, appellant's daughter, and four-year-old Ashley Garcia, who was the daughter of Raymond Garcia. Appellant apparently did
not have knowledge that he was not the father of Ashley until after the incident, which
forms the basis of appellant's convictions. 
3. Appellant appears to make this argument only with respect to the first count of
capital murder.
4. Appellant had given a prior statement in which he did not mention striking Amanda,
but stated only that he had found her gasping for breath after he put her in her crib. He
also described the prior incident in which Phillip struck Amanda with a toy truck. 
5. Appellant does not specify his age at the time of the offense in his brief.
6. See also Ripkowski v. State, 61 S.W.3d 378, 392 (Tex.Crim.App. 2001).