Opinion issued November 6, 2008

 









In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00408-CR






MARK ANTHONY MEDRANO, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 174th District Court

Harris County, Texas

Trial Court Cause No. 1055799






MEMORANDUM OPINION

 A jury convicted appellant, Mark Anthony Medrano, of capital murder. (1) 
Because the State did not seek the death penalty, the trial court assessed his
punishment at life imprisonment. (2) In two points of error, appellant argues that the
evidence is legally and factually insufficient to support his conviction for capital
murder.

 We affirm.

Background

 Appellant dated Leah Quintanilla for about two weeks before he moved in with
her and her family, including her three children. The complainant, Quintanilla's son,
Sabian, was almost two years old at the time. Appellant never worked while living
with the family, but he baby-sat the complainant and his siblings once Quintanilla
began working.

 At trial, the complainant's great-aunt testified that, after appellant began
babysitting, the complainant's behavior changed from that of a happy child to that of
a child who appeared scared of appellant and cried when appellant was around. The
complainant's great-aunt also testified that appellant called the complainant names
such as "cry baby" and "faggot." The complainant's grandmother testified, however,
that the complainant never appeared frightened of any family members and that she
had never seen appellant strike or abuse the complainant in any way. 

 Quintanilla testified that when appellant was the sole babysitter for her
children, her three-year-old son, Nicholas, told her that appellant "hit the baby." She
then testified that appellant appeared upset when confronted, and that he denied ever
hitting the complainant. 

 The night before the complainant's death, his grandmother bathed him. She
testified that he was playing in the tub and appeared fine. The grandmother testified
that when she informed appellant the next day that he had to baby-sit Quintanilla's
children while she ran errands, he appeared upset. When the grandmother left, the
complainant was watching television with his siblings and appellant was the only
adult at home. Within an hour and a half, appellant called the grandmother's cell
phone and told her that the complainant was not breathing and that he had choked on
a rubber band. She told appellant to call 911 and rushed back home.

 Appellant told the 911 operator that he had been hitting and slapping the
complainant, pushing on the complainant's stomach, and that he had left some
bruises. The complainant's great-aunt arrived at the trailer at the same time appellant
was on the phone with the 911 operator. She testified that appellant was yelling and
screaming while shaking the complainant's limp body and that appellant appeared
angry and upset. Appellant told the complainant's grandmother that he was trying to
give CPR to the complainant, but she could tell that the complainant was not alive. 

 Vedron Bordeaux, the paramedic who first arrived on the scene, testified that
the complainant's body was lying on the floor of a bedroom between the bed and a
wall. Bordeaux also testified that appellant entered the room with the complainant's
body saying, "I'm sorry. I'm sorry." Bordeaux testified that he did not think the
complainant's injuries could have been caused by the administration of CPR. 
Bordeaux testified that the complainant was not breathing and never regained a pulse
in spite of Bordeaux's attempts at resuscitation. 

 Deputy G. Almeida, a deputy who arrived after appellant's call to 911, testified
that appellant did not appear to feel any remorse over what had happened. Deputy
B. Smith testified that appellant told him that he found the complainant not breathing
when he went to change a diaper. Deputy Smith testified that when he asked
appellant if he had given the complainant CPR, appellant said that he had not. 
Deputy Smith stated that he observed appellant covering his face and saying, "He's
dead, he's dead," but he felt appellant was insincere. Deputy Smith also testified that
although appellant claimed the complainant choked on a rubber band, no rubber band
was ever found.

 Detective E. Clegg testified that appellant gave a statement to the Harris
County Sheriff's Department claiming that the complainant's three-year-old brother,
Nicholas, was beating the complainant. Appellant also stated that the complainant
had fallen off of the bed after he had tossed the complainant onto the bed. Appellant
stated that he found the complainant choking on something after he had come back
inside from smoking a cigarette.

 Dr. Ana Lopez, the medical examiner, testified that the complainant's death
was a homicide and not an accident. The complainant had a total of 63 bruises on
his 25-pound body, and the bruising found on the complainant's body was not
consistent with the daily activity of a two-year-old. Dr. Lopez noted that the
complainant had multiple recent injuries, and the bruises were of varying shades,
which indicated that at least some of the injuries had occurred prior to the day he
died. The complainant had four fractured ribs with a large amount of hemorrhaging. 
He also had a large tear in the root of his intestines, a large tear in his liver, and a tear
in the membranes that line his abdomen. The complainant had an extensive amount
of blood in his abdominal cavity--a total of 38% of his blood volume filled his
abdomen.

 Dr. Lopez testified that these injuries were consistent with the use of a large
amount of force, either from a blow from an adult hand or a kick or from an unknown
object. Dr. Lopez also stated that the injuries were not consistent with choking or
untrained CPR because the amount of hemorrhaging around the breaks in the
complainant's ribs would not be present if the breaks occurred after the complainant
quit breathing. Dr. Lopez testified that the cause of death was "blunt abdominal
trauma with mesenteric and hepatic lacerations" and that the complainant essentially
bled to death. 

 Dr. Joan Shook, the State's expert witness, testified that the complainant's
injuries were consistent with having been beaten to deathnot with CPR, choking,
slapping, or a short fall. She testified that the complainant's injuries would have been
caused by something like a fall of several stories, a blow from an object like a
baseball bat, or a kick or punch from an adult.

 Dr. Matthias Okoye, appellant's expert witness, testified that all of the
complainant's injuries could have been consistent with CPR, choking, and falling
from unknown objects. He disagreed with the State's expert witnesses as to the cause
of the complainant's injuries. 

Standard of Review

 When an appellant challenges both the legal and factual sufficiency of the
evidence, we must first determine whether the evidence introduced at trial was legally
sufficient to support the verdict. Harmond v. State, 960 S.W.2d 404, 406 (Tex.
App.--Houston [1st Dist.] 1998, no pet.). We review the legal sufficiency of the
evidence by viewing the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). Although our analysis considers all the evidence presented at trial,
we may not re-weigh the evidence and substitute our judgment for that of the fact
finder. Id.

 Factual sufficiency analysis involves three basic ground rules. Lancon v. State, 
253 S.W.3d 699, 704 (Tex. Crim. App. 2008). First, we must recognize that a jury
has already passed on the facts and we must accord the jury the proper deference to
avoid substituting our judgment for that of the jury. Id. at 70405 (citing Clewis v.
State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996)). Second, when we find the facts
determined by the jury to be insufficient to affirm a conviction, we must clearly lay out
and explain how the evidence supporting the verdict is too weak on its own, or how
contradicting evidence greatly outweighs evidence supporting the verdict. Id. at 705. 
Finally, we view all of the evidence in a neutral light when conducting this review. 
Id. We may only set aside a verdict when the evidence supporting the verdict is so
weak as to render the verdict clearly wrong or manifestly unjust. Id. (citing Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)).Analysis

 In his first and second points of error, appellant argues that the evidence was
legally and factually insufficient to support his conviction for capital murder. 
Specifically, appellant argues that the evidence was legally and factually insufficient
to show that he inflicted the complainant's injuries and that the hand, foot, or
unknown object used to inflict the complainant's injuries has a deadly weapon.

 A person commits the offense of capital murder if he intentionally or knowingly
causes the death of an individual under six years of age. Tex. Penal Code Ann.
§§ 19.02(b)(1), 19.03(a)(8) (Vernon Supp. 2008). Undisputed testimony or substantial
evidence that a defendant was alone with a child when the fatal injuries were sustained
supports a conviction for capital murder. See Robbins v. State, 27 S.W.3d 245,
248-49 (Tex. App.--Beaumont 2000), aff'd, 88 S.W.3d 256 (Tex. Crim. App. 2002)
(holding that testimony that established defendant was alone with child when she died
by "human means" was sufficient to support capital murder conviction); see also
Gordon v. State, 173 S.W.3d 870, 877 (Tex. App.--Fort Worth 2005, no pet.)
(upholding conviction when child was injured while under care of one person); Butts
v. State, 835 S.W.2d 147, 151 (Tex. App.--Corpus Christi 1991, pet. ref'd) (holding
evidence was sufficient when appellant was alone with complainant at time she
suffered severe head injury).

 Here, Dr. Okoye and Dr. Shook testified about the extreme injuries suffered by
the complainant and determined that the complainant had bled to death. Both medical
experts testified that the complainant's injuries were consistent with injuries caused
by a punch, kick or blow from an unknown object. The State presented undisputed
evidence that appellant was the only adult with the complainant at the time of his
death. The evidence shows that appellant was tending to three young children--the
two-year- old complainant, the complainant's three-year-old brother, Nicholas, and the
complainant's infant sister, Alazay--at the time of the incident. The evidence shows
that the complainant's grandmother left him with appellant, and he died within the
hour. We conclude that this evidence is legally sufficient to show that appellant
caused the complainant's death. See Robbins, 27 S.W.3d at 248-49; King, 29 S.W.3d
at 562.

 In his factual insufficiency argument, appellant contends that the complainant's
injuries were accidentally inflicted when he incorrectly attempted CPR on the
complainant. He also argues that the State offered no testimony regarding how long
the complainant could have lived after the injuries had been inflicted. However, the
State presented evidence that the complainant appeared fine before he was left alone
with appellant. The State also presented evidence of the extreme nature of the
complainant's fatal injuries. The complainant had over 60 bruises, tears in his
intestines, liver, and abdomen, and injuries to his abdomen that were consistent with
a punch, kick, or blow impacting his abdomen multiple times. Given the severe nature
of these injuries, it was reasonable for the jury to conclude that the complainant was
not suffering from the fatal injuries when his grandmother left him watching
television. The evidence is factually sufficient to show that appellant caused the
complainant's death. 

 Furthermore, the State presented evidence that appellant had abused the
complainant. The complainant's great-aunt gave testimony which indicated that the
complainant was scared of appellant, and Quintanilla testified that her older son told
her that appellant had hit the complainant. The State also presented several witnesses
who testified to appellant's apparent lack of genuine remorse after the complainant's
death. 

 Appellant gave several conflicting accounts of how the complainant was injured
on the day he died. These accounts included appellant's telling complainant's
grandmother that the complainant had choked on a rubber band; appellant's telling
911 that he had hit, slapped, and pushed on the complainant's stomach; appellant's
telling the complainant's great-aunt that he tried to administer CPR; and appellant's
giving a statement to the Harris County Sheriff's Department that the complainant's
older brother beat the complainant. The medical examiner, Dr. Lopez, testified that
the complainant's injuries were indicative of a large amount of force from an adult
hand, kick, or unknown object. Two expert witnesses testified that the complainant's
injuries were inconsistent with choking, or with an untrained person's attempt to
perform CPR, or with any of appellant's other scenarios. Because this Court must give
almost complete deference to the jury's evaluation of the credibility of the expert
witness testimony, we defer to the jury's decision to find that the State's experts were
credible. See Lancon, 253 S.W.3d at 705 (citing Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006)). Likewise, we defer to the jury's decision to disbelieve
appellant's expert witness's testimony that the complainant's injuries could have been
the result of falling from the bed, choking, or attempts at CPR and its decision to
believe the State's expert medical witnesses, who testified that the bruises found on
the complainant's body were not consistent with the daily activity of a two-year-old. 
See id. Our evaluation may not intrude upon the jury's role as the sole judge of the
weight and credibility accorded any witness's testimony. Id.; see also Tex. Code
Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). Thus, after
examining all the evidence, we determine that the evidence supporting the jury's
conclusion that appellant caused the complainant's injuries is not so weak that the
jury's verdict seems clearly wrong or manifestly unjust. Lancon, 253 S.W.3d at 705;
Cain, 958 S.W.2d at 406.


 Appellant also argues that the evidence is legally and factually insufficient to
show that a hand, foot, or some unknown object was a deadly weapon. Appellant
states that the experts at trial did not testify that an adult fist or foot or an unknown
object were deadly weapons. He claims that the State failed to prove the indictment's
allegations that he "intentionally and knowingly caused the complainant's death by
striking the complainant with a deadly weapon (an unknown object) or by striking the
complainant against a deadly weapon (an unknown object)."

 A deadly weapon is defined as "anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury." Tex. Penal Code
Ann. § 1.07(a)(17)(B) (Vernon Supp. 2008). Expert testimony is not required before
a jury can make a finding that a weapon is deadly. Bethel v. State, 842 S.W.2d 804,
807 (Tex. App.--Houston [1st Dist.] 1992, no pet.). The jury may consider all the
facts of a case when determining whether a weapon is "deadly." Id. (citing Blain v.
State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983)). The presence and severity of
any wounds is a consideration in the determination that a weapon is "deadly." Jackson
v. State, 668 S.W.2d 723, 725 (Tex. App.--Houston [14th Dist.] 1983, pet. ref 'd); see
also Gordon, 173 S.W.3d at 877 (holding that anything which actually causes death
is "deadly weapon"). Furthermore, a factfinder may affirmatively find that a deadly
weapon was used even if the object is not identified. Regan v. State, 7 S.W.3d 813,
819-20 (Tex. App.--Houston [14th Dist.] 1999, pet. ref'd).

 Here, the record shows that the complainant's fatal injuries were consistent with
being "beaten to death" by multiple strikes from a hand, foot, or unknown object. This
testimony is legally sufficient to establish that the hand, foot, or unknown object that
caused the complainant's fatal injuries was a "deadly weapon." See Gordon, 173
S.W.3d at 877 (holding that evidence about the severity, scope, and nature of child's
injuries is evidence of manner of use of object causing injury or death). 

 Appellant argues that the complainant's injuries were the result of choking,
falling from a bed, misapplied CPR, normal two-year-old behavior, or a beating from
the complainant's three-year-old brother. However, the State's expert witnesses
testified that the complainant bled to death due to injuries caused by blunt abdominal
trauma consistent with a strong blow from an adult's hand, foot, or from an unknown
object such as a baseball bat. Furthermore, both of the State's expert witnesses
testified that the abdominal injuries and fractured ribs were not consistent with either
choking or untrained CPR and that a short fall or blows from a three-year-old were not
capable of inflicting the kind of injuries sustained by the complainant. Although
appellant's medical expert testified that some of the complainant's injuries were
consistent with appellant's explanations for the injuries, the jury was not required to
find appellant's expert credible. See Cain, 958 S.W.2d at 407; see also Lancon, 253
S.W.3d at 705. A decision is not manifestly unjust merely because the jury resolved
conflicting views of the evidence in favor of the State. Cain, 958 S.W.2d at 407 n.5;
see Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). Thus, after examining
all of the evidence, we determine that the evidence supporting the jury's conclusion
that a hand, foot, or unknown object was a deadly weapon is not so weak that the
jury's verdict seems clearly wrong or manifestly unjust. Lancon, 253 S.W.3d at 705;
Cain, 958 S.W.2d at 406. We conclude that the evidence is factually sufficient to
show that an adult hand, foot, or an unknown object was a deadly weapon in this case. 


 We overrule appellant's first and second points of error.

Conclusion

 We affirm the judgment of the trial court.



 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).

 

 
1. See Tex. Penal Code Ann. § 19.03(a)(8) (Vernon 2008).
2. See id. § 12.31(a) (Vernon Supp. 2008); Tex. Code Crim. Proc. Ann. art. 37.071, 

 § 1 (Vernon 2006).