Affirmed and Memorandum Opinion filed February 19, 2008








Affirmed and Memorandum Opinion filed February 19, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00292-CR

____________

 

TEODORO VELASQUEZ-ANARIBA, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 351st
District Court

Harris County, Texas

Trial Court Cause No. 1023872

 



 

M EM O R A N D U M  O P I N I O N

Teodoro
Velasquez-Anariba appeals his conviction for capital murder and raises four
issues.  Appellant asserts that: (1) the evidence was legally insufficient to
support the conviction; (2) the evidence was factually insufficient to support
the conviction; (3) the trial court erred by denying his motion to suppress
custodial statements; and (4) the trial court erred by denying his requested
submission of aggravated assault as a lesser included offense.  We affirm.








Background

At 11:33
a.m. on March 17, 2005, HPD Officer Klaus received a call from the manager of
the Azalea Place Apartments in Houston reporting that a maintenance man had
discovered a bloody mattress and the body of a man beneath it.  After securing
the scene, Officer Klaus contacted homicide investigators.  

The
investigators discovered a trail of blood between the dumpster and an apartment
rented to appellant; once inside the apartment, they discovered blood spatters
and a box-spring missing a mattress.  Investigators also found a wallet
belonging to Isidro Perez on the kitchen counter.  The wallet contained a
paystub but no money.  

Appellant=s neighbor testified that she saw
appellant and another man carrying the mattress out of the apartment the
preceding evening, March 16, around midnight.  The mattress appeared to be
heavy and she thought she saw a body in it.  The lead investigator, Detective
Chavez, learned that the apartment had been rented to appellant, making him a
person of interest in the case.  The victim was identified as Perez.

On the
same morning that Perez=s body was recovered, a Border Patrol agent detained
appellant in New Orleans because he had no identification to confirm citizenship. 
After appellant was fingerprinted, the agent determined that there was an open
deportation warrant for him.  He also noted blood on appellant=s pants and shoes, which appellant
claimed was from a cut finger.  Appellant was taken into custody based on the
deportation warrant.

Detective
Chavez learned in Houston that appellant was in custody in New Orleans.  He
called immigration officials and asked them to bring appellant to Houston to
facilitate the investigation of Perez=s murder.  Appellant arrived in
Houston on March 25, 2005, and was questioned, at which time he denied any
involvement in Perez=s murder or robbery.  After DNA testing of the blood found on
appellant=s shoes and clothing confirmed it was Perez=s, appellant confessed to his
involvement in the murder.  








Appellant
said in his confession that he and his brother-in-law, Noe, were drinking at a
local restaurant when they met Perez.  After drinking together for a few hours,
they agreed to obtain additional beer and return to appellant=s apartment to continue drinking.
When they returned to the apartment complex, Noe and Perez went upstairs to the
apartment while appellant stayed downstairs to urinate. Appellant said that
when he went up to the apartment he heard Perez accuse Noe of Ahiding women.@  When Noe told him there were no
women, Perez allegedly slapped him.  Noe responded by grabbing a hammer and
striking Perez Aabout three times.@  Noe then instructed appellant to
kill Perez.  Appellant responded by grabbing a pair of scissors and stabbing
Perez several times in the chest.  Before moving the body in the mattress, Noe
removed Perez=s wallet; Noe and appellant then split the  $180 it contained. 
Afterwards, they called a taxi and went to the Greyhound bus station. 
Appellant bought a ticket to New Orleans.  

Perez=s autopsy revealed five skull
fractures consistent with a hammer strike and five stab wounds to the chest and
abdomen consistent with the use of scissors.  Expert testimony indicated Perez
was alive during the stabbing, but could not definitively establish which
occurred first B the stabbing or the hammer strikes.  The cause of
Perez=s death was determined to be both the
stabbing and the hammer strikes.

Analysis

1.         Legal and Factual Sufficiency of the
Evidence to Support the Capital Murder Conviction

 








Appellant=s first and second issues assert that
the evidence was not legally or factually sufficient to prove he formed the
necessary intent to rob Perez before the commission of the murder.  A person
commits the offense of capital murder when he intentionally or knowingly causes
the death of an individual and the murder is committed in the course of
committing or attempting to commit a robbery.  Tex. Penal Code Ann. ' 19.03(a)(2) (Vernon Supp. 2007). 
For murder to qualify as a capital murder, the killer=s intent to rob must be formed before
or at the time of the murder.  Alvarado v. State, 912 S.W.2d 199, 207
(Tex. Crim. App. 1995).  Proof of a robbery committed as an afterthought and
unrelated to the murder will not provide sufficient evidence of capital murder.
Id.  The State carries its burden when it proffers evidence from which a
rational jury could conclude beyond a reasonable doubt that the defendant
formed the requisite intent before or during the commission of the murder.  Id. 
The jury may infer the requisite intent from the conduct of the defendant.  Id. 
This is true even when the element of appropriation occurs after the murder.  Russo
v. State, 228 S.W.3d 779, 793 (Tex. App.CAustin 2007, pet. ref=d)

Appellant
challenges the legal sufficiency supporting his conviction, contending there is
insufficient evidence to find the requisite intent to commit robbery.  He
contends that the robbery was merely incidental to the murder B the result of an argument gone bad B and that the intent to rob Perez was
formed after the murder.  

In
reviewing legal sufficiency, we view all of the evidence in the light most
favorable to the verdict to determine whether a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt.  Salinas
v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  This is a highly
deferential standard, as it is Athe responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh evidence, and to draw inferences from basic
facts to ultimate conclusions.@  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)).  








Appellant=s sufficiency challenge focuses the
analysis on whether the jury was entitled to infer an intent to commit
robbery.  Guidance on this issue is provided in Cooper v. State, 67
S.W.3d 221, 222 (Tex. Crim. App. 2002).  In Cooper, the defendant was
convicted of robbery based on evidence he struck his uncle repeatedly and then
drove off in the uncle=s truck. Id. at  222.  The defendant argued that there
was insufficient evidence to establish a nexus between the assault and the
theft.  Id. at 222-23.  The court of appeals reversed the robbery
conviction, holding that there was insufficient evidence to establish a nexus
between the assault and the theft given the lack of evidence regarding
financial difficulty or prior coveting of the truck.  Cooper, 29 S.W.3d
901, 904 (Tex. App.CBeaumont 2000), rev=d, 67 S.W.2d 221 (Tex. Crim. App. 2002).  The Texas Court
of Criminal Appeals disagreed, holding that a natural inference of the nexus
arises when an assault is followed immediately by a theft.  Cooper, 67
S.W.3d at 224 (citing McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim.
App. 1989)).

This
teaching applies with equal force here.  Cooper explains that the
required nexus between murder and robbery in a finding of capital murder is the
same as the required nexus between assault and theft in a finding of robbery.  Id.
at 223.  A robbery occurring immediately after a murder establishes an
inference that the murder was meant to facilitate the robbery.  McGee,
774 S.W.2d at 234; see also Guevara v. State, 152 S.W.3d 45, 50 (Tex.
Crim. App. 2004) (intent can be inferred from the acts, words, and conduct of
the accused); Cooper, 67 S.W.3d at 224 .

There is
clear evidence of a robbery immediately following Perez=s murder.  This evidence gives rise
to an inference that the murder was meant to facilitate the robbery.  This
inference is reinforced by the evidence of appellant=s financial difficulties.  Police
found a notice of lock-out in his apartment, and the apartment manager
testified that appellant was behind in his rent.  This evidence establishes a
motive for the robbery of $180 from Perez, which Noe and appellant split
immediately after killing Perez.  See Russo v. State, 228 S.W.3d 779,
794 (Tex. App.CAustin 2007, pet. ref=d) (motive is not a necessary element, but evidence of motive
can be used to prove guilt).  This evidence is legally sufficient for a
rational jury to find every element of the charged offense beyond a reasonable
doubt.








 Appellant
cannot change this conclusion merely by positing a different theory of the
murder.  See Cooper, 67 S.W.3d at 223-24 (rational jury could disregard
the defendant=s theory that he was hearing voices and thought his uncle was hitting a
child); Nelson v. State, 848 S.W.2d 126, 132 (Tex. Crim. App. 1992)
(jury was not required to believe defendant=s claim that he killed the victim
because victim was looking at him in a lustful manner, and was free to believe
that the motive was, at least in part, to rob the victim); see also Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000) (jurors are the
exclusive judges of facts, the credibility of witnesses, and the weight to give
their testimony). 

We
overrule appellant=s first issue.

In
reviewing factual sufficiency, we view all the evidence in a neutral light both
for and against the finding, and set aside the verdict only if proof of guilt
is so obviously weak as to undermine confidence in the jury=s determination; or if the proof of
guilt, while adequate if taken alone, is greatly outweighed by contrary proof. 
Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005). 
Appellant does not contest his role in the murder, evidence of which is
overwhelming even without his confession.  He merely contends in his second
issue that the evidence is factually insufficient to establish the murder was
committed in furtherance of the robbery.  However, the evidence is clear that
appellant was a party to the murder, that he immediately participated in taking
Perez=s money, and that he was suffering
from financial difficulties at the time of the offense.  We conclude,
therefore, that the evidence is not so weak that the verdict is clearly wrong
or manifestly unjust, and that the great preponderance of the evidence does not
weigh against the verdict.  See Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).  

Appellant=s second issue is overruled.

2.         Denial of Motion to
Suppress








We
review a trial court=s ruling on a motion to suppress evidence for abuse of
discretion.  Swain v. State, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005),
cert. denied, 127 S.Ct. 145 (2006); State v. Callaghan, 222
S.W.3d 610, 612 (Tex. App.CHouston [14th Dist.] 2007, pet. ref=d).  If supported by the record, a
trial court=s ruling on the motion to suppress will not be overturned.  Callaghan,
222 S.W.3d at 612; Hill v. State, 902 S.W.2d 57, 59 (Tex. App.CHouston [1st Dist.] 1995 pet. ref=d). At a suppression hearing, the
trial judge is the sole finder of fact and is free to believe or disbelieve any
or all of the evidence presented. Callaghan, 222 S.W.3d at 612; Hill,
902 S.W.2d at 59.  We defer to the trial court=s determination of historical facts
that depend on credibility.  Callaghan, 222 S.W.3d at 612; Hill,
902 S.W.2d at 59.  When reviewing a trial court=s ruling on a mixed question of law
and fact, we review the trial court=s application of the law to the facts
of the case de novo.  Estrada v. State, 154 S.W.3d 604,
607 (Tex. Crim. App. 2005).  

When the
State seeks to justify the arrest of an individual based upon an arrest
warrant, it must produce that warrant and its supporting affidavit for
inspection in the trial court.  Etheridge v. State, 903 S.W.2d 1, 19
(Tex. Crim. App. 1994).  AThis requirement is imposed so that the trial court may
inspect the documents and determine whether probable cause existed and ensure
that the arrestee=s rights have been fully protected.@  Garrett v. State, 791 S.W.2d
137, 140 (Tex. Crim. App. 1990). If the State cannot produce these documents,
it may proffer testimony from the magistrate, an officer, or another witness
familiar with the warrant.  Garrett, 791 S.W.2d at 140; Dorsey v.
State, 964 S.W.2d 701, 704 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d).  This insures that the trial
court had a sufficient opportunity to ascertain that the rights of the accused
are protected, and to inquire into the basis of the warrant made.  Garrett,
791 S.W.2d at 141.

Appellant
was detained by a Border Patrol officer in New Orleans for an outstanding
deportation warrant.  Appellant later was transferred to the Houston INS office
to put him in closer proximity to Texas authorities investigating Perez=s murder.  During his detention he
was interviewed on at least two occasions, the second of which produced a full
confession.  








At
appellant=s suppression hearing, the circumstances surrounding his first and second
interview were discussed at length.  Both Detective Chavez and appellant took
the stand and were subjected to extensive cross-examination.  Appellant=s attorney brought to the court=s attention that Detective Chavez had
not seen the deportation warrant himself; the attorney implied that the arrest
and detention might not have been legal.  On cross-examination, appellant
admitted he was aware of the outstanding warrant and not surprised when he was
arrested on the bus in New Orleans. The trial court noted that it was not
within the State=s authority to release appellant because he was in federal
custody.  After hearing this testimony and considering the circumstances, the
trial court denied suppression of the statements and other relevant materials
discussed at the hearing.  At the time of this ruling, the warrant had not been
admitted into evidence and no witnesses with personal knowledge of the warrant
had been proffered in support of the warrant that resulted in appellant=s detention at the INS facility.  The
court then adjourned for 30 minutes.

Thirty
minutes after the suppression hearing ended, and before the trial began, the
State produced a copy of the INS arrest warrant for appellant that was Asigned and acknowledged by the
defendant, on the back, on September 3, 2004.@  The warrant was marked as State=s Exhibit No. 130.  The State
requested that the warrant be received into evidence for purposes of the
suppression hearing, and appellant=s attorney responded: AJudge, for the record, I know you=ve already ruled on the motion, but I
have no objection to its admission.@  The trial court then admitted State=s Exhibit No. 130 into evidence; it
is part of the record before this Court.  

Appellant
does not dispute that State=s Exhibit No. 130 is a copy of a valid warrant, and that the
INS had the authority to apprehend and detain appellant at its INS facility. 
Appellant nonetheless argues that the ruling denying the suppression of
appellant=s statements was an abuse of discretion because the trial court did not
have a copy of the federal warrant before it when it made the initial ruling.  








We need
not address whether the State has any obligation to prove the validity of an
accused=s detention in a federal facility,
and we need not review the admissibility of appellant=s custodial statements under the
Attenuation Doctrine.[1]  In an
abundance of caution, the State procured a copy of the warrant.  This copy was
admitted as part of the record for the suppression hearing.[2] 
This supplementation was permissible. Montalvo v. State, 846 S.W.2d 133,
135-138 (Tex. App.CAustin 1993, no pet.) (trial court can re-open a suppression
hearing and consider new evidence; decision to do so is in the sound discretion
of the court) (citing Cain v. State, 666 S.W.2d 109, 111 (Tex. Crim.
App. 1984)); see also Ex Parte King, 134 S.W.3d 500, 503 (Tex. App.CAustin 2004, pet. ref=d) (a suppression order in a
non-final ruling may be revisited during the case=s pendency); Gilbert v. State,
874 S.W.2d 290, 292-93 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d) (unlike the prohibition against
reopening the evidence of a cause once argument has been concluded, a
suppression hearing may be reopened whenever the administration of justice
would be served).  The decisions to have a pretrial hearing or to make a
determination at trial fall within the trial court=s sound discretion; accordingly, the
trial court may reconsider its decisions or permit additional argument or
evidence as it chooses.  See Montalvo, 846 S.W.2d at 137-38.  The trial
court acted well within its discretion in admitting additional evidence in
connection with the suppression hearing, and in doing so it negated any basis
for appellant=s complaint regarding the earlier absence of the warrant.

Appellant=s third issue is overruled.

 

 

 








3.         Refusal to Submit
Aggravated Assault as a Lesser Included Offense

Appellant=s fourth issue asserts that the trial
court erred by denying his request for an instruction on the lesser included
offense of aggravated assault.  To determine whether a lesser included offense
may be submitted to a jury, (1) the lesser offense must be included within the
proof necessary to establish the offense charged; and (2) some evidence must
exist in the record that would permit a jury to rationally find that if
appellant is guilty, he is guilty only of the lesser offense.  Hall v. State,
225 S.W.3d 524, 526 (Tex. Crim. App. 2007); Campbell v. State, 149
S.W.3d 149, 152 (Tex. Crim. App. 2004). 

The
first prong of this test is met because aggravated assault based upon
intentionally, knowingly or recklessly causing serious bodily injury is a
recognized lesser included offense of capital murder.  Cardenas v. State,
30 S.W.3d 384, 392 (Tex. Crim. App. 2000); Jackson v. State, 992 S.W.2d
469, 475 (Tex. Crim. App. 1999).             

However,
appellant cannot satisfy the second prong.  Appellant was not entitled to an
instruction of the lesser included offense of aggravated assault if the
evidence shows him to have been at least guilty of homicide.  Jackson,
992 S.W.2d at 475.  Appellant admits his brother-in-law asked him  to kill
Perez.  Dr. Morna Gonsulin, the medical examiner, testified that Perez was
still alive when appellant stabbed him, and that the stab wounds inflicted by
appellant were a cause of Perez=s death.  She testified that both the head wounds and the
stab wounds were independently sufficient to cause Perez=s death, and that both caused his
death.  Appellant=s suggestion that his intentional stabbing of Perez was not
the actual cause of Perez=s death thus is defeated by the medical testimony offered at
trial.  Likewise, appellant=s claimed uncertainty about whether Perez was alive does not
change the conclusion in light of Dr. Gonsulin=s testimony that the injuries were
inflicted on a living person.

Appellant=s fourth issue is overruled.

 








Conclusion 

The judgment of the trial
court is affirmed.

 

 

/s/        William
J. Boyce

Justice

 

 

Judgment rendered and Memorandum Opinion filed
February 19, 2008.

Panel consists of Chief Justice Hedges, and Justices
Anderson and Boyce.

Do not publish C
Tex. R. App. P. 47.2(b).









[1]  See Weems v. State, 167 S.W.3d 350, 358-64
(Tex. App.CHouston [14th Dist.] 2005 pet. ref=d) (providing a full description of the Attenuation
Doctrine and its applicability to evidence garnered when existence of a warrant
is not proved).





[2] Appellant does not challenge the validity of the
warrant produced for the trial court, a copy of which was given to him when the
State offered it into evidence.